1 Phyllis Shafton Katz (SBN 138341)
CALIFORNIA RURAL LEGAL ASSISTANCE, INC.
2 3 Williams Road
Salinas, CA 93905
3 Telephone: (831) 757-5221
Facsimile: (831) 757-6212
4
Cynthia L. Rice (SBN 87630)
5 CALIFORNIA RURAL LEGAL ASSISTANCE, INC.
1430 Franklin Street, Suite 103
6 Oakland, CA 94612
Telephone: (510) 267-0762
7 Facsimile: (510) 267-0763
8 Attorneys for Plaintiffs

9

10 **UNITED STATES DISTRICT COURT**

11 **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12

13 AMELIA MARQUEZ, LORENZO DIEGO )  Case No.: 5:16-cv-06089
14 CANO, MARIA TONAYAN REYES, AND )
AARON LUGO HERNANDEZ,          )  Hon. Beth Labson Freeman
15                              )
        Plaintiffs,            )  **PLAINTIFFS' POINTS AND**
16                              )  **AUTHORITIES IN SUPPORT OF**
                               )  **MOTION FOR DEFAULT JUDGMENT**
17      vs.                    )  **AGAINST NICOLE PASCARIELLO, NLP**
                               )  **JANITORIAL, INC., AND COAST TO**
18                              )  **COAST WEST, INC.**
NLP JANITORIAL, INC., COAST TO )
19 COAST WEST, INC., et al.      )  **DATE:   May 23, 2019**
                               )  **TIME:   9:00 A.M.**
20      Defendants.            )  **DEPT:   Courtroom 3**
21                              )

22 _____

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...............................................................................4

I.    INTRODUCTION ...................................................................................11

II.   STATEMENT OF FACTS .......................................................................14

III.  ARGUMENT .........................................................................................17

    A.  IT IS WITHIN THE SOUND DISCRETION OF THIS COURT TO ENTER JUDGMENT AGAINST DEFENDANT NICOLE PASCARIELLO AND NLP JANITORIAL. ...............................................................................18

    B.  EACH OF THE PLAINTIFFS' CAUSES OF ACTION IS ADEQUATELY PLEADED AND IS MERITORIOUS. ........................................................18

        1.  Defendants Pascariello, NLP Janitorial, and Coast to Coast West, Inc. are liable for labor law violations throughout the claim period. 19

        2.  Defendants Failed to Pay Minimum Wages in Violation of California Statute and Regulations (First Cause of Action). ...............................19

        3.  Defendants Failed to Pay Overtime Wages in Violation of Cal. Lab. Code §§ 510, 1198 (Second Cause of Action). .................................24

        4.  Defendants Failed to Pay Overtime Wages in Violation of the FLSA, 29 U.S.C. § 207, 216(b) (Third Cause of Action). ...........................26

        5.  Defendants Failed to Provide Timely and Complete Meal and Rest Periods or Pay Additional Wages in Lieu Thereof in Violation of Cal. Lab. Code§ 226.7 (Fourth Cause of Action) ....................................26

            a.  Compensation Owed for Meal Periods................................26

            b.  Compensation for Failure to Offer Rest Periods. .................27

        6.  Defendants Failed to Provide Itemized Wage Statements in Violation of Cal. Lab. Code § 226 (Fifth Cause of Action) ..............................28

        7.  Defendants Failed to Pay Plaintiffs All Wages Due Plaintiffs Upon Termination or Quit in Violation of Cal. Lab. Code §§ 201-203 (Sixth Cause of Action). ...................................................................30

        8.  Plaintiffs are Entitled to Injunctive Relief for Violation of Labor Laws and the California Unfair Competition Law (Seventh Cause of Action). ...............................................................................................30

        9.  Defendants Committed Violations of Cal. Labor Laws Against Plaintiffs and Other Aggrieved Employees and are Liable for Penalties Pursuant to Cal. Lab. Code §§ 2699, et seq., and Applicable Penalty Provisions (Eighth Cause of Action). ...................................31

a.   Plaintiffs Are Aggrieved Employees and Met the Administrative Exhaustion Requirements Prior To Bringing This Action. ........................................................... 32

b.   PAGA Penalties Due Plaintiffs .............................. 33

c.   PAGA Penalties Due Other Aggrieved Employees .............. 37

10.   Plaintiffs Are Entitled to An Award of Attorneys' Fees and Costs. . 40

C.   THERE IS NO SIGNIFICANT DISPUTE AS TO SIGNIFICANT ALLEGATIONS IN THE COMPLAINT ...................................... 43

D.   DEFENDANTS ARE NOT UNFAIRLY PREJUDICED AS THEY HAD AMPLE OPPORTUNITY TO DEFEND THE ALLEGATIONS AND PRODUCE EVIDENCE AND DEFAULT WAS ENTERED BECAUSE OF THEIR FAILURE TO DO SO ...................................... 44

E.   THE MONETARY RECOVERY IS NOT EXCESSIVE, OR SPECULATIVE AND IS BASED ON INFORMATION FROM RECORDS PREPARED BY DEFENDANTS ...................................... 45

F.   PAGA FUNDS FOR THE OTHER AGGRIEVED EMPLOYEES SHOULD BE PAID TO THE LWDA, AND HELD UNTIL EMPLOYEES COME FORWARD AND CLAIM THEIR SHARE ...................................... 47

V.   CONCLUSION ...................................... 47

**TABLE OF AUTHORITIES**

**Federal Cases**

*Alvarez v. IBP, Inc.*, 339 F.3d 894, 915 (9th Cir. 2003).................................................................... 22

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)..........................................20,21,22

*Blum v. Stenson*, 465 U.S. 886, 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984) ………………….41

*Brock v. Seto*, 790 F.2d 1446, 1448 (9th Cir. 1986).................................................................. 21, 22

*Cabardo v. Patacsil*, 248 F. Supp. 3d 1002, 1010 (E.D. Cal. 2017) ................................................. 29

*Chambers v. City of Los Angeles*, 794 F.2d 1205, 1210 (9th Cir 1986) amended on reh'g 808 F.2d 1373 (9th Cir. 1987) ……………………………………………………………………………41

*Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016................................................... 44

*Culley v. Lincare Inc.*, 236 F. Supp. 3d at 1184 ...................................................................... 28,32

*Cuviello v. Feld Entm't, Inc.*, 2015 U.S. Dist. LEXIS 4155, *5-6, 2015 WL 154197, at *2-*3 (N.D. Cal., January 12, 2015) …………………………………………………….........….43

*Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, 2017 U.S. Dist. LEXIS 105521, *6, 2018 WL 2412137 (N.D. CA 2017)……………………………………………………………………...42

*Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986) ......................................................... 18

*Garnett v. ADT, LCal. Lab. Code*, 139 F. Supp. 3d 1121, 1133 (E.D. Cal. 2015)......................... 29

*Garcia v. Stanley*, 2017 U.S. Dist. LEXIS 32550, §11 (N.D. Cal., March 7, 2017 ………………42

*Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977........................................................ 18

*Gonzales v. City of San Jose*, 2016 U.S. Dist. LEXIS 69390, *9-14(N.D. Cal., May 26, 2016) ….43

*Guerrero v. Cal. Dep't of Corr. & Rehab.*, 2016 U.S. Dist. LEXIS 78802, *11-12, 2016 WL 3360638  (N.D Cal. June 16, 2016) ……………………………………………….……………...42

In *re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 942 (9th Cir. 2011) …………………43

*In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 591-92 (N.D. Cal. 2015) …………………..42

*Lenk v. Monolithic Power Sys.*, 2018 U.S. Dist. LEXIS 9109, *23 (2018 N.D. Cal.)………....41, 42

*Manuel v. Quest Diagnostics*, 341 Fed. Appx. 348, 349 (9th Cir. 2015)................................... 21, 22

*Martin v. U.S.*, 117 Fed. Cl. 611, 623-624 (2014).........................................................23

*McLaughlin v. Seto*, 850 F.2d 586, 589-590 (9th Cir. 1988) ...................................21,22

*Mendoza v. Nordstrom, Inc.*, 865 F.3d 1261, 1265 (9th Cir. 2017) ................................31

*NewGen, LCal. Lab. Code v. Safe Cig, LCal. Lab. Code*, 840 F.3d 606, 617 (9th Cir. 2016) ... 18,31

*Novoa v. Charter Commc'ns, LCal. Lab. Code*, 100 F. Supp. 3d 1013, 1028 (E.D. Cal. 2015) ..... 29

*Philip Morris U.S.A. Inc. v. Castworld Prods.*, 219 F.R.D. 494, 502 (C.D. Cal. 2003) ........ 30,42,43

*Sali v. Corona Reg'l Med. Ctr.*, No. 15-56460, slip op. at 11 (9th Cir. May 3, 2018) ............... 15,28

*Schuchardt v. Law Office of Rory W. Clark, supra,*  314 F.R.D. 673  …………………………...41-42

*Sillah v. Command Int'l Sec. Servs.*, 154 F. Supp. 3d 891, 911 (N.D.Cal. 2015) ..........................22

*Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) …………….43

*Valenzuela v. Giumarra Vineyards Corp.*, 614 F. Supp. 2d 1089, 1099 (E.D. Cal. 2009) ..............26

*Van Kempen v. Matheson Tri-Gas, Inc.*, 2017 U.S. Dist. LEXIS 137182, *22-24, 2017 WL 3670787, at *9 (N.D. Cal. Aug. 25, 2017) ……………………………………………...…42

**State Cases**

*Amalgamated Transit Union v. Sup. Ct.*, 46 Cal. 4th 993, 1001 (2009) ...........................................37

*Armenta v. Osmose, Inc.* 135 Cal. App. 4th 314, 322 (2005)....................................................21,23

*Bldg. Materials & Constr. Teamsters' Union, Local 216 v. Farrell*, 41 Cal. 3d 651, 658 (1986)... 21

*Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1028 (2012)................................27

*Ghory v. Al-Lahham,* 209 Cal. App. 3d 1487, 1490 (1989) .................................................251

*Hernandez v. Mendoza* 199 Cal. App. 3d 721, 726-27 ......................................................21

*Kirby v. Immoos Fire Protection, Inc.*, 53 Cal. 4th 1244, 1254 (2012) ........................................28

*Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 595 (2000)........................................................20

*Reynolds v. Bement*, 36 Cal.4th 1075, 1094 ......................................................................37

*Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1144-45 (2012) . 29,30,35,35,37

**Federal Statutes**

28 U.S.C. § 1331 ................................................................................................ 18

28 U.S.C. §1332 ................................................................................................. 18

29 U.S.C. § 207, 216(b) .......................................................................... 11,25,26

29 U.S.C. § 216 (b), ........................................................................................... 40

29 U.S.C. § 251, ................................................................................................. 26

**State Statutes**

California Business and Professions Code § 17203 .....................................30, 46

Cal. Lab. Code § 201 ...............................................................................29,30,32,40

Cal. Lab. Code § 202 ...............................................................................30,32,34,40

Cal. Lab. Code §203 ..................................................................... 29, 30,35,37,46

Cal. Lab. Code § 204 ........................................................................................ 32

Cal. Lab. Code§ 210 ......................................................................................37,44

Cal Labor Code § 226.3 ..................................................................................34,37

Cal. Lab. Code § 510 ....................................................................................11, 24

Cal. Lab. Code§ 558 ......................................................................... 32,35,36,37,38

Cal. Lab. Code § 1182.12 ..................................................................................19

Cal. Lab. Code§ 1194.2 .................................................................................22,23,40

Cal. Lab. Code§1197 ................................................................19,32,33,37,39,44

Cal. Lab. Code §1198 ................................................................................11,24,32

Cal. Lab. Code§ 1695.7 (c)(4) ......................................................................40,46

Cal. Lab. Code § 2698 ......................................................................................31

Cal. Lab. Code § 2699 ................................ 11,31,32,33,34,35,36,37,38,39,40,41,42,43,4445,46,47

California Lab.Code §2810 ............................................................................................ 12

**Regulations**

Cal.Code Regs. tit. 8 § 11140(2)(G) (Order 14) ..........................................................20

Cal. Code Regs. tit. 8 § 11050(2)(K) ..................................................................19,20,26,27

**Other Authority**

*Castillo v. Bank of America Nat'l Ass'n*, 2018 Westlaw 1409314, *6 (N.D. Cal. 2018) ............... 27

*Castillo*, 2018 Westlaw 1409314 at *6; *In re: Autozone, Inc.*, No. 3:10–md–02159–CRB, 2016 WL 4208200, at *6 (N.D. Cal. Aug. 10, 2016 ....................................................................... 27

*Fleming v. Covidien, Inc*., 2011 WL 7563047, *4 (C.D. Cal. 2011) ............................... 44

*Rodriguez v. SGCal. Lab. Code, Inc*., No. 2:08-CV-01971, 2012 U.S. Dist. LEXIS 164383, 2012 WL 5705992, at *18 (E.D. Cal. Nov. 15, 2012)......................................................... 20

Plaintiff's & Authorities ISO Motion for Default Judgment
Case No.: 5:16-cv-06089

## I. **INTRODUCTION**

This multi-party action alleges that Defendants NLP Janitorial, Inc.; Coast to Coast West, Inc.; Agustin Janitorial, LCC; Winters Company d/b/a Winters Janitorial; Robert Winters, an individual; Interval Leisure Group, Inc.; the Hyatt Corporation; and Nicole Pascariello all acted in the capacity of employers to hire and employ Plaintiffs and others to perform work as nighttime janitorial workers at the Hyatt Carmel Highlands hotel in Monterey County from 2008 to 2013 and then violated various federal and state labor laws in connection with that employment, including failing to pay all wages due, failing to provide timely meal and rest periods, failing to provide accurate itemized wage statements, violating California's Unlawful Competition protections, and failing to sufficiently fund a contract for services. (Second Amended Complaint ("SAC"); Amended Declaration of Phyllis Shafton Katz ("Katz Dec") Exhibit 5.  Plaintiffs brought this action on behalf of themselves (SAC Causes of Action 1-7 and 9) and as a representative action under the California Labor Law Private Attorney General Act, Cal. Lab. Code§§ 2699, *et seq.* (PAGA) on behalf of an estimated one to two full time equivalent other aggrieved employees.  (SAC Eighth Cause of Action.).

On February 19, 2014, Plaintiffs initiated the instant lawsuit in Monterey Superior Court against Defendants NLP Janitorial, Inc.; Nicole Pascariello; Coast to Coast West, Inc.; Winters Company D/B/A Winters Janitorial; Robert Winters; and Augustin Janitorial, LCC, (hereafter referred to collectively as the "Original Defendants").   Plaintiffs alleged that, between September 2008 and March 2013, Defendants collectively failed to pay state or federal minimum wages or overtime wages in violation of California Labor Code §§ 510 and 1198 and 29 U.S.C. §§ 207, 216(b); failed to provide mandated meal and rest periods in violation of California Labor Code §§ 226.7 and 512; and failed to provide accurate itemized

wage statements or other required wage reports in violation of California Labor Code § 226. Additionally, Plaintiffs sought enforcement of statutory penalties for each of the state Labor Law violations suffered by them and other aggrieved employees pursuant to California Labor Code §§2698, et seq. (PAGA). A First Amended Complaint was filed April 16, 2014 to correct the name Coast to Coast Cleaning West, Inc. to Coast to Coast West, Inc.

On or around December 2015, Plaintiffs served third-party subpoenas on non-parties Hyatt Corporation and Highlands Inn Investors II, L.P.  Hyatt Corporation produced invoices reflecting payments to Winters Company for certain janitorial services at the Highlands Inn. On or about May 4, 2016, Plaintiffs filed an amendment to the state court complaint to substitute the New Defendants, Hyatt Corporation, Highlands Inn Investors II, LP, and Interval Leisure Group, Inc. ("Hyatt Defendants")  for fictitious DOE defendants.

Plaintiffs thereafter, on September 14, 2016, amended the complaint again, to assert liability against the Hyatt Defendants for the above-described wage and hour violations based on the allegation that the Hyatt Defendants were joint employers of Plaintiffs with the original Defendants and/or successors in liability to the original Defendants.

The Second Amended Complaint (SAC), adding a ninth cause of action for failure to adequately fund a contract for services under California Labor Code § 2810 against the Hyatt Defendants only.  The Hyatt Defendants removed the action to this Court pursuant to federal question jurisdiction based on Plaintiffs' claim for failure to pay overtime under the Fair Labor Standards Act, 29 U.S.C. §§207, 216(b).  Before discovery between Plaintiffs and the Hyatt Defendants began, Plaintiffs and the Hyatt Defendants entered unto settlement negotiations, and on or around May 10, 2017, reached an agreement and executed a "Settlement Agreement and Release of Claims." Katz Dec., Exh. 8.  The Settlement was

1

2

approved by the Court on December 7, 2017.  This settled only the claims alleged against and

as to the Hyatt Defendants.

3

4

5

6

7

8

9

10

11

12

13

The case continued against Pascariello, NLP Janitorial, Inc., and Coast to Coast West, Inc. the remaining defendants.  At the same court hearing at which the court approved the Hyatt settlement, on December 7, 2017, Plaintiffs brought a motion to enforce the Order of the Superior Court regarding Defendant Pascariello's failure to produce documents and provide further responses to Plaintiffs' discovery requests. See ECF 51 and 51-1. The Court adopted the Superior Court's Order compelling discovery and ordered Pascariello to comply with that Order on or before December 22, 2017. *See*, ECF 52.  The Court requested that Plaintiffs submit a status report regarding Pascariello's compliance with the Superior Court's Order no later than January 24, 2018. *Id.*

14

15

16

17

18

19

20

21

22

23

24

25

Plaintiffs filed a declaration in support of their request for an Order to Show Cause regarding default and sanctions against Pascariello which included reference to Pascariello's stated intention to file bankruptcy. After additional notices to Pascariello, investigation to the Court's satisfaction by Plaintiffs' counsel, and continued silence from Pascariello, the Court was satisfied that Pascariello had not sought bankruptcy protection and issued an Order to Show Cause RE: Terminating Sanctions on February 22, 2018.  Pascariello was given until March 23, 2018 to submit a written response or the Court warned that her answer being stricken, and default entered against her. ECF 62.  Pascariello failed to respond and the Court struck her Answer and entered her default pursuant to Rule 55(a) on March 29, 2018.  ECF 65.

26

27

28

A default was entered against NLP Janitorial Inc. on October 3, 2014. Katz Dec Exh. 13. A default was entered against Coast to Coast West, Inc. on June 27, 2018. Katz Dec. Exh 13. Plaintiffs now bring this Motion for Default Judgment to establish the amount of damages

owed them by Pascariello, NLP Janitorial Inc., and Coast to Coast West, Inc.

## II.   STATEMENT OF FACTS

Plaintiffs worked as members of a nighttime cleaning crew directly employed by Defendants NLP Janitorial, Inc., Nicole Pascariello, Coast to Coast West, Inc., and Winters Company D/B/A Winters Janitorial, Robert Winters.  These Original Defendants were a group of shell corporations, partnerships, and individuals who operated a large janitorial contracting business in California, and in order to maximize profits, created a number of subcontractor relationships in an attempt to evade liability.

Plaintiffs and their crewmates typically worked for the Original Defendants seven nights per week cleaning the restaurant, kitchen, and lobby areas of the Hyatt Carmel Highlands hotel, often for less than minimum wage, and they never received overtime compensation or legally mandated meal and rest periods. They were paid a flat inadequate weekly rate regardless of the hours worked. Eight of the nine causes of action asserted in this lawsuit seek unpaid wages, damages, penalties and restitution for the Plaintiffs individually. Plaintiffs also asserted a single cause of action under PAGA on behalf of themselves as well as other current and former employees.  Nicole Pascariello[1] and NLP Janitorial Inc. are the only remaining Defendants who have not settled, filed bankruptcy, become a defunct entity, or been dismissed.

The Plaintiffs all worked the same schedule.  Seven days a week, the Plaintiffs worked at the hotel from 11:00 p.m. until 5:00 or 5:30 in the morning, without a break.  SAC ¶ 20;

---

[1] Plaintiffs added additional defendants based on joint employer theories after a noticed motion in federal court.  These new defendants, Hyatt Corporation, Interval Leisure Group, Inc., and Highlands Inn Investors II, L.P. entered a settlement with Plaintiffs.  Katz Dec. Exh. 8.  The Court approved the settlement between Plaintiffs and these new defendants on December 7, 2017.

Declaration of Amelia Marquez in Support of Motion for Entry of Default Judgement ("Marquez Dec"), ¶7, Declaration of Maria Tonayan Reyes in Support of Motion for Entry of Default Judgement ("Reyes Dec.") ¶6, Declaration of Lorenzo Diego Cano in Support of Motion for Entry of Default Judgement ("Cano Dec") ¶6, Katz Dec. Exh. 4C, Bates pgs. 170-208, 240-268, 271-281.  The employer's control over the Plaintiffs began 45 minutes earlier, when the Plaintiffs were picked up in the City of Salinas in transportation provided and required by the Defendants. Marquez Dec. ¶7;  SAC ¶ 18-19; Reyes Dec. ¶6, Cano Dec. ¶6. The Plaintiffs were not free from the employer's control until they had been delivered back in Salinas, 45 minutes after work at the hotel south of Monterey had concluded.  SAC ¶ 18-19; Marquez Dec ¶7, Reyes Dec. ¶6, Cano Dec  ¶6 .  Thus, every week during their employment by the Defendants, each Plaintiff worked eight hours per day, 56 hours a week: 40 hours of straight time and eight hours of overtime at time and a half under applicable provisions of the FLSA and California law.  Although Plaintiffs worked eight hour days, they were not given or permitted either meal or rest breaks.  SAC ¶ 21; Marquez Dec ¶7, Reyes Dec. ¶6, Cano Dec ¶6.

Plaintiffs were paid a set amount each week, regardless of the number of hours they worked.  SAC ¶ 20; Marquez Dec. ¶8 Katz Dec. Exh. 1 (Bates 34-51) and 2 (Bates 78-84). In addition to promising a flat rate of pay despite fluctuating hours obligations, the Defendants also made or caused to be made illegal deductions from the Plaintiffs' pay for equipment, supplies, check cashing, and debit card fees, further reducing the amount they were paid.  SAC ¶ 23, 26  Katz Dec. Exh. 4 Bates 271. Plaintiffs were not paid for all the hours they worked, were not paid minimum wage, were not paid overtime for hours in excess

of eight (8) hours[2] per day or when they worked in excess of 40 hours per week.  When they

worked a seventh (7th) day in the week, they were not paid a 7th day premium wage for that

day's work.  When special events were held at the hotel, Plaintiffs worked up to ten (10)

hours and still received the same weekly rate, Marquez ¶7, Cano Dec. ¶7, Reyes Dec. ¶6,

SAC ¶ 20.  Finally, there were weeks that they were not paid at all.   SAC ¶ 22; Marquez Dec.

¶9, Cano Dec. ¶9, 10, Reyes Dec. ¶¶8, 9.

Plaintiffs were required to sign agreements purporting to establish an independent

contractor relationship between Plaintiffs and Defendants.  SAC ¶ 25; Katz Dec. Exh. 1,2.

However, Plaintiffs were not independent contractors.  Defendants or their agents assigned

tasks, supervised and evaluated work, provided tools and supplies, dictated schedules, and

forbade meal and rest breaks, consistent with Plaintiffs' employee status. Dec. Marquez ¶¶

12, 15, Dec Reyes ¶ 11, Dec Cano ¶¶ 13 - 14 Plaintiffs were never given itemized wage

statements.  SAC ¶ 24; ; Marquez Dec. ¶16, Cano Dec. ¶3, Reyes Dec. ¶¶3,14.

Defendants NLP Janitorial, Inc., Nicole Pascariello, Coast to Coast Cleaning West,

Inc., Winters Company d/b/a Winters Janitorial, and Robert Winters were a single entity

operating through interrelated entities and individuals.  Documentary evidence provided by

Defendant Pascariello and other Defendants supports this claim.  In response to Plaintiffs'

Request for Production of documents from Nicole Pascariello, Pascariello provided business

records of N.L.P. Janitorial establishing that the Plaintiffs worked for her at Hyatt Carmel in

2012 and 2013.  Katz Dec., Exh. 1(Bates 38-45).

---

[2] Plaintiffs and others in their crew often worked extra hours after special events.  However, Plaintiffs have not been able to reliably reconstruct this time and are not seeking underpaid wages for this time.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Pascariello/N.L.P. records include independent contractor agreements that each of the Plaintiffs were compelled to sign as a condition of her employment.  *Id.* at NP-03, NP-07. The contracts list "N.L.P. Janitorial" in the documents' title, but include a second business name, "Coast to Coast" as the "cliente" for whom Marquez would be serving as an independent contractor in 2012 and 2013.  *Id.*  In response to a request for documents from Defendant Winters, Winters Company, and Winters Janitorial, Defendant Winters confirmed Plaintiffs worked at the "Hyatt Carmel for "Coast to Coast West" who is referred to as the "cliente" in 2010 and 2011.  Katz Dec., Exh. 2C.  Defendant Hyatt provided invoices submitted to Hyatt for janitorial services at the Hyatt Carmel in 2013: the vendor is not N.L.P. Janitorial, as might be predicted based on the documents furnished by Pascariello, but "Winters Company, Coast to Coast Cleaning," demonstrating that Winters, Coast to Coast, and N.L.P. Janitorial are a single business entity, and supporting Plaintiffs' contention that each of the defendants acted as an agent of the others.  *See* Katz Dec., Exh 3B (Bates 101-156).  Moreover, Defendant Hyatt provided a spreadsheet listing all janitorial services and other miscellaneous services, like chimney sweeping, between 2008 and 2013: "Winters Company" is listed consistently as a vendor between January 2010 and 2013, while "N.L.P. Janitorial" never appears in the spreadsheet.  *See* Katz Dec., Exh 3B (Bates 116-156) . Plaintiffs were paid with N.L.P. Janitorial checks signed by Defendant Pascariello. Katz Dec., Exh 4C (Bates 241-247, 250-255, 258-268); Reyes Dec. ¶ 7 and Exhibit 1, Cano Dec. ¶7 and Exhibit 1._

## III.  <u>ARGUMENT</u>

Plaintiffs are entitled to entry of judgment and damages, penalties and interest as they have followed the procedures established in Fed. Rules Civ. Proc. 55(b)(2 and established a

reasonable basis for damages and penalties claimed by Plaintiffs, individually and on behalf of the other aggrieved employees.

### A.   IT IS WITHIN THE SOUND DISCRETION OF THIS COURT TO ENTER JUDGMENT AGAINST DEFENDANT NICOLE PASCARIELLO AND NLP JANITORIAL.

Plaintiffs are entitled to entry of default judgment against Defendants based the allegations in the Second Amended Complaint, which are assumed to be true based on Defendants' default. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977 ("[U]pon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."), *accord*, *NewGen*, *LCC v. Safe Cig, LLC*, 840 F.3d 606, 617 (9th Cir. 2016).  Plaintiffs here present a reasonable estimate of damages through declarations of the Plaintiffs and a summary of evidence regarding each of the causes and claims for which Plaintiffs seek recovery. This showing is adequate to support default judgment.   *NewGen,* 840 F.3d at 617 (upholding default judgment of $1.48 mil. based on detailed declaration regarding damages).

In determining whether default judgment should enter, this court may consider (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiffs' substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986). Under this standard Plaintiffs' motion should be granted.

### B.   EACH OF THE PLAINTIFFS' CAUSES OF ACTION IS ADEQUATELY PLEADED AND IS MERITORIOUS.

No procedural challenges were made to any of the Plaintiffs' causes or claims by any of the Defendants.  The court has subject matter jurisdiction over Plaintiffs' state law claims by operation of 28 U.S.C. § 1332, and over its single federal claim under 28 U.S.C. § 1331.

1.  <u>DefendantS Pascariello and NLP Janitorial are liable for labor law violations throughout the claim period.</u>

The SAC alleges that each of the Defendants was acting as the agent of every other Defendant.  SAC ¶ 15.  Defendant Pascariello has not contested this claim.  Pascariello produced N.L.P. Janitorial Inc. business records in her personal response to Plaintiffs' first discovery request, Katz Dec., Exh. 1, and Plaintiffs' submitted copies of N.L.P. Janitorial checks, signed by Pascariello.  Katz Dec., Exh. 4C, 33-39, 42-47, 50-59. Documents provided by the Hyatt Defendants confirm that a single entity provided janitorial services for the Hyatt Defendants throughout the claim period.  Katz Dec., Exh. 3.

2.  <u>Defendants Failed to Pay Minimum Wages in Violation of California Statute and Regulations (First Cause of Action).</u>

Defendant was an employer, SAC ¶¶ 16, 17, and was required to, but failed to pay Plaintiffs at least the minimum wage, as required by California Labor Code section 1197 and Industrial Welfare Commission Wage Order 5-2001.  Cal. Code Regs., tit. 8 § 11050 (hereinafter "Wage Order"); see also Cal. Lab. Code § 1182.12 (setting state minimum wage). Plaintiffs' testimony and the records submitted demonstrate that they each were denied minimum wage pay guaranteed by state statue and regulations. Marquez Dec ¶¶ 7, 8; Cano Dec ¶¶6, 7, 8; Reyes Dec. ¶¶6, 7; Katz Dec., Exh. 1, 2.  SAC ¶ 20, 29; Katz Dec., Exh. 4C. These violations give rise to a cause of action.  SAC ¶ 27-31; Cal. Lab. Code § 1194.

Plaintiffs are entitled to compensation for all hours worked at the minimum wage under California law.  Cal. Lab. Code §§ 1194, 1197.  Hours worked is defined in Wage Order 5 as all "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not

required to do so." Cal. Code Regs. tit. 8, § 11050.  Plaintiffs performed labor for which they received no wages.  SAC ¶ 20, 22; Marquez Dec ¶ 9; Cano Dec ¶¶9, 10, 16; Reyes Dec. ¶¶8,9 At the beginning of their employment, and on other occasions Plaintiffs worked several days and even workweeks without any compensation whatsoever. SAC ¶ 22; Marquez Dec ¶ 9; Cano Dec ¶¶9, 10, 16; Reyes Dec. ¶¶8,9. They were not compensated for the 1.5 hours during which they were under their employer's control while being transported from and to the designated pick up locations 45 minutes from the work site.  SAC ¶¶ 18, 19; Marquez Dec ¶ 7; Cano Dec ¶6; Reyes Dec. ¶6..  This is compensable time under California law.  *Morillion v. Royal Packing Co*., 22 Cal. 4th 575, 595 (2000) (compulsory travel time is compensable as "hours worked" under Wage Order 14), see also, *Rodriguez v. SGCal. Lab. Code, Inc*., No. 2:08-CV-01971, 2012 U.S. Dist. LEXIS 164383, 2012 WL 5705992, at *18 (E.D. Cal. Nov. 15, 2012).  The Wage Order language construed by the California Supreme Court in *Morillion* is identical to the definition of hours worked in Wage Order 5.  See Cal.Code Regs. tit. 8 § 11140(2)(G) (Order 14) and Cal. Code Regs. tit. 8 § 11050(2)(K).[3]

Plaintiffs have reconstructed their time based on the daily schedule that they worked, as no time records were maintained by the Defendants.  When an employer fails to keep proper records of an employee's work, it would be unjust to allow the employer to benefit from this failure, and so an employee's evidence may suffice to establish the fact of uncompensated work. *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 687 (1946). "Where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, . . . the solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated

---

[3] Wage Order 5 includes additional language in the definition that are unique to the health care and personal attendant occupations and not applicable here.

work. Such a result would place a premium on an employer's failure to keep proper records . . .; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the [FLSA].'" *Id.* The Ninth Circuit has consistently applied this rule. *See Brock v. Seto,* 790 F.2d 1446, 1448 (9th Cir. 1986); *McLaughlin v. Seto*, 850 F.2d 586, 589-590 (9th Cir. 1988). See also *Hernandez v. Mendoza* 199 Cal. App. 3d 721, 726-27, (1988) (applying the standard set forth in *Brock* in connection with a California Labor Code claim). Where California statutory protections and those of the FLSA are comparable, California is guided by federal precedent. *Bldg. Materials & Constr. Teamsters' Union, Local 216 v. Farrell*, 41 Cal. 3d 651, 658 (1986); *Armenta v. Osmose*, 135 Cal. App. 4th 314, 322 (2005).

The court must give the employee latitude in presenting evidence.  Given the employers' obligation to keep accurate records, and the FLSA's "remedial nature . . . and the great public policy . . . it embodies," the employee's burden must not to be "an impossible hurdle." *Anderson,* 328 U.S. at 687.  Thus, when an employer fails to keep adequate records, the employee may submit other evidence to substantiate that "he has in fact performed work for which he was improperly compensated." *Id.*  The employee's evidence is sufficient if it permits a "just and reasonable inference." *Id.*  For instance, employee testimony based on first-hand knowledge "constitutes competent evidence" sufficient to establish uncompensated overtime. *Manuel v. Quest Diagnostics*, 341 Fed. Appx. 348, 349 (9th Cir. 2015).  Once the employee has presented evidence establishing the fact of uncompensated work, the employer must then "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference." *Andersen*, 328 U.S. at 687-688.  The Defendants in this case have not offered any evidence rebutting the fact of the Plaintiffs' employment or the hours worked.

Once an employee has established that he has worked and not been paid, "the damage is . . . certain," and "[t]he uncertainty lies only in the amount of damages." *Id.* at 688.  It falls to the court to establish damages: "it is the duty of the trier of facts to draw whatever reasonable inferences can be drawn from the employees' evidence." *Anderson*, 328 U.S. at 693; *see also Brock*, 790 F.2d at 1448-49 (citing *Anderson*, 328 U.S. at 693); *Manuel*, 341 Fed. Appx. at 349 (citing *Anderson*, 328 U.S. at 693).  The court's calculation may be imprecise, but the employer "cannot be heard to complain that the damages lack the exactness and precision" that would have been possible if accurate records had been kept. *Anderson*, 328 U.S. at 688; *see also Alvarez v. IBP, Inc*., 339 F.3d 894, 915 (9th Cir. 2003) (affirming the district court's finding of "reasonable" compensable time) (citing Brock, 790 F.2d at 1449); *accord Sillah v. Command Int'l Sec. Servs*., 154 F. Supp. 3d 891, 911 (N.D.Cal. 2015) (also noting that this is the standard used in determining damages under California law).

The burden shifting and damages calculation procedure established by *Anderson* extends to non-testifying employees in group cases. *McLaughlin v. Seto*, 850 F.2d 586, 589-590 (9th Cir. 1988).  Since "[t]he burden is not on the employees to prove the precise extent of uncompensated work," the testimony of a representative sample can establish "as a matter of reasonable inference," the work and pay conditions of non-testifying employees, even when the testimony of the testifying employees is not precisely consistent. *Id.* (citing *Andersen*, 328 U.S. at 687).  That is also true when determining damages under California wage and hour causes of action for group cases, and methods may include statistical sampling. *Bell v. Farmers Ins. Exchange* 115 Cal. App. 4th 715, 748–9 (2004).

Plaintiffs are entitled to the difference between the amount earned and the amount paid.  Declaration of Cynthia L. Rice in Support of Motion for Default Judgment, (hereafter "Rice Dec.",  Summary Exh. 1, Columns 7, 8; Summary Exh. 2 Columns 7,8.

Furthermore, under Cal. Lab. Code§ 1194.2, they are entitled to liquidated damages in an amount equal to the unpaid minimum wages.  Cal. Lab. Code § 1194.2 ("an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon").  Labor Code § 1194.2 provides that employers are liable for liquidated damages in an amount equal to the minimum wage unlawfully unpaid, as well as interest thereon.  The California Labor Code, unlike the FLSA, bars employers from averaging wages across a pay period to evade liability for failing to pay minimum wage for all hours worked.  *See Armenta*, 135 Cal. App. 4th at 324; *compare Martin v. U.S.*, 117 Fed. Cl. 611, 623-624 (2014) (approving the averaging method for FLSA liquidated damages calculations).

To calculate minimum wages and the attendant liquidated damages for failure to pay minimum wage under California law, wages earned are not apportioned retrospectively across all of the hours worked.  *Armenta*, 135 Cal. App. 4th at 324.   Any hours left unpaid once the wages actually received have been accounted for must be paid at least the minimum wage, with liquidated damages owed if the wages are insufficient by this method.  *Id.* When the guaranteed hourly wage is more than minimum wage, the underpaid wages due are calculated based on that wage.  *Armenta v. Osmose, Inc.,* 135 Cal. App. 4th 314, 323 ["'Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract.' As the trial court noted, adopting the averaging method advocated by respondents contravenes these code sections and effectively reduces respondents' contractual hourly rate. "]  Therefore, Plaintiffs seek the  recovery of unpaid wages calculated at the regular rate of pay and liquidated damages at the applicable

minimum wage rate.   Rice Dec. Summary Exh. 1, Column 9 (total wages owed) and

Column 10 (liquidated damages).

Plaintiffs have performed these calculations, using the applicable minimum wage rate

of $8.00 per hour multiplied by number of uncompensated hours per work week.  This

includes the 1.5 hours of uncompensated travel time, plus the weeks for which no wages

were paid.  Rice Dec. ¶¶ 3(e); 5(e).  The unpaid minimum wages due Plaintiffs as liquidated

damages are as follows:

**Marquez:**     **$9,268.00** (Rice Dec., Summary Exh. 1, last page, Column 10)

**Cano:**        **$1,596.00** (Rice Dec., Summary Exh. 2, Section 1 Column 10)

**Reyes:**       **$1,344.00**  (Rice Dec., Summary Exh. 2, Section 2, Column 10)

3.   <u>Defendants Failed to Pay Overtime Wages in Violation of Cal. Lab.
Code §§ 510, 1198 (Second Cause of Action).</u>

Cal. Lab. Code § 510 provides that 8 hours per day constitutes a day's work and that

overtime is due after 40 hours per week. Further, "the first eight hours worked on the seventh

day of work in any one workweek shall be compensated at the rate of no less than one and one-

half times the regular rate of pay for an employee."  Cal. Lab. Code § 510.   It is unlawful to

employee any worker for longer hours than those fixed by the applicable wage order or law. Cal.

Lab. Code §1198 and Plaintiffs may recover the amount of unpaid overtime wages in an action

pursuant to Cal. Lab. Code § 1194.

Plaintiffs routinely worked more than 40 hours each week, and routinely worked seven

days in a row. The Plaintiffs were picked up for work at their homes and arrived at the workplace

at approximately 11:00 p.m., where they remained until 5:00 or 5:30 in the morning. Their

workday ended when they returned to their homes, approximately 5:45 AM or 6:00 AM.  When

transportation time is included this results in an average eight hour work day (6.5 hours of time

at the hotel, plus 1.5 hours of transportation time) seven days a week, or 56 hours per work week. For the purpose of determining the actual amount of underpaid wages due, the "salary" promised Plaintiffs would normally be used to determine the regular hourly rate of pay.  However, for the purpose of this default motion Plaintiffs have performed the calculations for all underpaid wages due based solely on the applicable minimum wage rate.[4]

Plaintiffs have calculated the total amount of unpaid wages due based on these assumptions by multiplying the total number of hours worked by the applicable minimum wage and straight time rates and subtracting from that the actual amount of wages paid.  Rice Dec. ¶ 3(a)-(d); ¶ 5(a-d).  The unpaid wages due, including both straight time and overtime wages due, are as follows:

**Marquez:**    **$23,214.02** (Rice Dec. Summary Exhibit 1, last page Column 9)

**Cano:**    **$2,587.30** (Rice Dec., Summary Exhibit 2, Section 1, Column 9)

**Reyes:**    **$2,181.16** (Rice Dec., Summary Exhibit 2, Section 2, Column 9)

Pre-judgment interest is due on unpaid wages at the rate of 10% per annum.  For the purpose of this motion Plaintiffs have calculated interest due on unpaid wages from the 2013, for five (5) years, to date, on the unpaid wages which yields the following amounts due:

**Marquez:**    **$11,607.00**

**Cano:**    **$1,293.65**

---

[4] California law provides that this is based on the promised rate of pay, not the minimum wage or average hourly wage based on amounts paid. "[T]he wage order requires that when calculating overtime compensation due a salaried employee, his or her "'regular rate of pay'" must be computed by dividing the total weekly salary by no more than 40 hours, regardless of the number of hours actually worked." *Ghory v. Al-Lahham,* 209 Cal. App. 3d 1487, 1490 (1989). Under this contract wage calculation Plaintiffs would be entitled to a higher hourly rate.  However, since Plaintiffs did not include a cause of action based on that rate, for the purpose of default judgment Plaintiffs have performed calculations based solely on the applicable minimum wage rate.

**Reyes:**     **$1,090.58**

    4.    <u>Defendants Failed to Pay Overtime Wages in Violation of the FLSA,
29 U.S.C. § 207, 216(b) (Third Cause of Action).</u>

Plaintiffs have also suffered a violation of their rights under the FLSA which provides that covered employees must be paid overtime after 40 hours per week at the rate of one and one half times their regular rate of pay.  29 U.S.C. § 207(a)(1).  The FLSA does allow for averaging over the work week to determine whether the full overtime rate was paid.  However, a minimum wage violation occurred for those periods during which Plaintiffs were paid less than $344.47, which would be the minimum wage due for the 45.5 hours of compensable time worked per week under the FLSA.[5]  However, because these amounts would already be compensated for under the award of minimum wages and overtime wages due under California law, Plaintiffs do not seek separate compensation for these amounts.

    5.    <u>Defendants Failed to Provide Timely and Complete Meal
and Rest Periods or Pay Additional Wages in Lieu Thereof
in Violation of Cal. Lab. Code§ 226.7 (Fourth Cause of
Action)</u>

    a.    <u>Compensation Owed for Meal Periods</u>

The meal period provision of the IWC Wage Orders states:

    (a) No employer shall employ any person for a work period of more
than five (5) hours without a meal period of not less than 30
minutes, except that when a work period of not more than six (6)
hours will complete the day's work the meal period may be
waived by mutual consent of the employer and the employee.

Cal. Code Regs. tit. 8, § 11050(11).

    Cal. Lab. Code§ 226.7 is the enforcement mechanism for this right, and provides that:

(c) If an employer fails to provide an employee a meal or rest or recovery period in
accordance with a state law, including, but not limited to, an applicable statute or
applicable regulation, standard, or order of the Industrial Welfare Commission, the

---

[5] The Portal to Portal Act applies to Plaintiffs' and excludes transportation time. 29 U.S.C. § 251, *et seq.*

Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.

Cal. Lab. Code § 226.7.  Employees denied a meal period are entitled to a premium of one additional hour of pay.  *Id.*; *see also Valenzuela v. Giumarra Vineyards Corp.*, 614 F. Supp. 2d 1089, 1099 (E.D. Cal. 2009) (holding that under the applicable meal period regulations, employers are required at minimum to offer employees a meal period after a work period of five hours).  Here, Plaintiffs and other current or former employees were entitled to have a full 30 minute meal period, but they were not permitted meal breaks.  SAC ¶ 21, 43; Marquez Dec ¶ 7, 16; Cano Dec ¶14; Reyes Dec. ¶13.

Plaintiffs are entitled to compensation for the denied meal periods calculated at one missed meal period for each day worked.  This calculation yields the following amounts due:

**Marquez:**   **$5,936.00** (Rice Dec. Summary Exhibit 1, last page Column 12)

**Cano:**   **$1,064.00** (Rice Dec., Summary Exhibit 2, Section 1, Column 12)

**Reyes:**   **$ 896.00** (Rice Dec., Summary Exhibit 2, Section 2, Column 12)

b.Compensation for Failure to Offer Rest Periods.

A similar analysis applies to rest breaks.  Wage Order 5 provides that:

Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof.

8 Cal. Code Regs. tit. 8 § 11050(12).  Employees are entitled to paid rest breaks of at least 10 minutes off duty at a rate of four rest periods every four hours.  *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 1028 (2012).  If the employer fails to provide a rest break the employee is entitled to a premium pursuant to Cal. Lab. Code section 226.7(c), as for deprivation of meal breaks.

Plaintiffs were denied rest breaks entirely.  SAC ¶ 21, 45, 46; Marquez Dec ¶ 7, 16; Cano Dec ¶14; Reyes Dec. ¶13.

.  The amounts due Plaintiffs for the meal and rest period violations are calculated at the rate of one hour for each violation, per day, at their regular rate of pay.  SAC ¶ 47.

Meal and rest break premiums are considered wages, and failure to pay these premiums entitles employees to liquidated damages.  *Castillo v. Bank of America Nat'l Ass'n*, 2018 Westlaw 1409314, *6 (N.D. Cal. 2018).  Plaintiffs are entitled to compensation for the denied meal periods calculated at one missed meal period for each day worked.  This calculation yields the following amounts due:[6]

**Marquez:**   **$5,936.00** (Rice Dec. Summary Exhibit 1, last page Column 14)

**Cano:**   **$1,064.00** (Rice Dec., Summary Exhibit 2, Section 1, Column 14)

**Reyes:**   **$ 896.00** (Rice Dec., Summary Exhibit 2, Section 2, Column 14)

6.   <u>Defendants Failed to Provide Itemized Wage Statements in</u>
<u>Violation of Cal. Lab. Code § 226 (Fifth Cause of Action)</u>

Cal. Labor Code § 226(a) requires that employers provide wage statements that accurately itemize earnings, hours worked, applicable rates of pay, the name and address of the legal entity that is the employer, and payroll deductions, among other information.  Cal. Lab. Code § 226(a)  Employers are required to furnish itemized wage statements every pay period "as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash . . ."  *Id.*

---

[6] Since the violation leading to a meal and rest period premium is a failure to provide a meal or rest period, not a failure to pay wages, meal and rest period premiums are not considered nonpayment of wages for purposes of four-year statute of limitations for nonpayment of wages under the UCL.  *See Culley*, 236 F. Supp. 3d at 1195 (citing *Kirby v. Immoos Fire Protection, Inc.*, 53 Cal. 4th 1244, 1254 (2012)).  Therefore, the amount due to Plaintiff Marquez begins three years prior to initial filing, rather than four, as for her nonpayment of wages claim.  This distinction does not affect the other two Plaintiffs.

There is no dispute that Defendants did not provide Plaintiffs with itemized statements. SAC ¶¶ 49, 50; Katz Dec., Exhs. 1, 2, 4; Marquez Dec. ¶4; Cano Dec ¶3; Reyes Dec ¶3, 14.  The failure to provide wage statements is a violation of Cal. Lab. Code§ 226.  An employee is deemed to suffer injury if the employer fails to provide a wage statement.  Cal. Lab. Code§ 226(e)(2)(A); *Sali v. Corona Reg'l Med. Ctr.*, No. 15-56460, slip op. at 11 (9th Cir. May 3, 2018).  Plaintiffs need only show that Defendants were aware of the factual predicate—that they were not providing itemized statements.  *Cabardo v. Patacsil*, 248 F. Supp. 3d 1002, 1010 (E.D. Cal. 2017), *citing Novoa v. Charter Commc'ns, LCal. Lab. Code*, 100 F. Supp. 3d 1013, 1028 (E.D. Cal. 2015) and *Garnett v. ADT, LCal. Lab. Code*, 139 F. Supp. 3d 1121, 1133 (E.D. Cal. 2015).  Defendants paid Plaintiffs by personal check, or by debit card.  See Katz Dec. Exh. 4C (Bates 241-270) (Tonayan Reyes), Bates 241-247, (Cano), Bates 250-255, Marquez Bates 258-268, Cano Dec ¶11, Marquez Dec ¶ 10 .  Plaintiffs requested itemized wages statements from Defendants on May 16, 2013.  Katz Dec., Exh. 6. Nor did Defendants produce any wage statements in their subsequent responses to Plaintiffs' discovery requests, confirming that Defendants did not provide Plaintiffs with wage statements.  Katz Dec., Exhs. 1, 2.  The failure to provide wage statements is therefore knowing and intentional within the meaning of the statute.

Cal. Lab. Code § 226(e)(1) provides that an employee injured by the failure to provide accurate wage statements is entitled to the greater of her damages or "fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)."  Defendants failed to provide Plaintiffs and other current or former employees wage statements in 2010-2013.  While Plaintiffs belief that the applicable statute of limitations for these damages is three years.  Ninth Circuit case law has applied a one year statute.

Accordingly, on Plaintiff Marquez is entitled to these damages for the pay periods between February 19, 2013 and her termination date.  This yields a total amount due Marquez as follows:

**Marquez:**     **$150.00** (Rice Dec. ¶ 3(q), Summary Exhibit 1, last page Column 22)

7.    <u>Defendants Failed to Pay Plaintiffs All Wages Due
Plaintiffs Upon Termination or Quit in Violation of Cal.
Lab. Code §§ 201-203 (Sixth Cause of Action).</u>

Employers are liable for "waiting time penalties" when they fail to pay all wages owed timely after the employee's separation from employment.  Under Cal. Labor Code § 201(a), employers are required to pay all wages owed immediately upon discharge.  When employees voluntarily resign or separate themselves from employment, the employer must pay all wages owed within 72 hours.  Cal. Lab. Code § 202a).  If an employer willfully fails to pay all wages owed in accordance with sections 201 and 202, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."  Cal. Lab. Code § 203(a).

Because Plaintiffs were not timely paid all wages owed after they left the Defendants' employment more than five years ago, they are entitled to the statutory maximum of 30 days of waiting time penalties.  SAC ¶ 53-56; Marquez Dec ¶¶ 7, 8, 9, 18; Cano Dec ¶¶6, 7, 8, 9, 10, 16; Reyes Dec. ¶¶6, 7, 8, 9, 15.

**Marquez:**     **$1,920.00** (Rice Dec. Summary Exhibit 1, last page Column 15)

**Cano:**     **$1,920.00** (Rice Dec., Summary Exhibit 2, Section 1, Column 15)

**Reyes:**     **$1,920.00** (Rice Dec., Summary Exhibit 2, Section 2, Column 15)

8.    <u>Plaintiffs are Entitled to Injunctive Relief for Violation of
Labor Laws and the California Unfair Competition Law
(Seventh Cause of Action).</u>

Each of the labor law violations identified above constitutes an unlawful business

1  practice and may be enjoined pursuant to California Business and Professions Code section

2  17203.  Injunctive relief is appropriate as part of a default judgment. *Philip Morris U.S.A. Inc. v.*

3  *Castworld Prods.*, 219 F.R.D. 494, 502 (C.D. Cal. 2003) (proposed injunctive relief is

4  appropriate in default judgment because the claims otherwise warrant an injunction, and

5  Defendant, though well aware of serious claims brought against it, chose to ignore the lawsuit).

6          9.      <u>Defendants Committed Violations of Cal. Labor Laws
7                  Against Plaintiffs and Other Aggrieved Employees and are
8                  Liable for Penalties Pursuant to Cal. Lab. Code §§ 2699, et
9                  seq., and Applicable Penalty Provisions (Eighth Cause of
                   Action).</u>

10 California's Labor Code Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698 *et*

11 *seq.*, empowers an employee to bring a civil action for penalties on behalf of the State of

12 California:

13         [A]ny provision of this code that provides for a civil penalty to be assessed
14         and collected by the Labor and Workforce Development Agency or any of
           its departments, divisions, commissions, boards, agencies, or employees,
15         for a violation of this code, may, as an alternative, be recovered through a
16         civil action brought by an aggrieved employee on behalf of himself or
           herself and other current or former employees pursuant to the procedures
17         specified in Section 2699.3.

18 Cal. Lab. Code§ 2699 (a).  For purposes of PAGA:

19         "[A]ggrieved employee" means any person who was employed by the alleged violator
20         and *against whom <u>one</u> or more of the alleged violations was committed*.

21 Cal. Lab. Code§ 2699 (c) (emphasis added)*; see also Mendoza v. Nordstrom, Inc.*, 865 F.3d

22 1261, 1265 (9th Cir. 2017).

23         To bring a PAGA claim, the plaintiff must be an "aggrieved employee."  This means

24 that he or she has sustained "one or more of the alleged" violations.  See Cal. Lab. Code

25 §§ 2699 (a, (c).  Prior to bringing a PAGA claim, the aggrieved employee must give notice to

26 the employer and Labor & Workforce Development Agency of the alleged violations and

27 facts and theories supporting them.  Cal. Lab. Code § 2699.3 (a); *see also Mendoza*, 865 F.3d

28

at 1265. Some civil penalties available to an aggrieved plaintiff on behalf of other current or former employees and the state through PAGA are specifically provided in the Labor Code. But where the Code provision does not specifically provide a civil penalty, there is a penalty of "one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation." Cal. Lab. Code § 2699f (2). Civil penalties recovered under these provisions are split between workers, with 75 percent payable to the LWDA and 25 percent to the workforce. Cal. Lab. Code § 2699(i).

The unidentified workers are entitled to underpaid wages for up to three years from the date on which this claim was filed. However, since their identity is unknown, Plaintiffs rely on a one year period for establishing PAGA penalties. The one year period is established by the date on which the PAGA letter was mailed to the Defendants, which was on May 14, 2013. Katz Dec. Exh. 7. Thus, the period for PAGA calculations is from May 14 of 2012. *See Culley*, 236 F. Supp. 3d at 1192.

a. <u>Plaintiffs Are Aggrieved Employees and Met the Administrative Exhaustion Requirements Prior To Bringing This Action.</u>

Plaintiffs are aggrieved employees as they each worked for Pascariello and NLP Janitorial Inc. and sustained violations of the Labor Code, as detailed above. SAC ¶ 17.

Plaintiffs, through their counsel, sent a certified letter on May 14, 2013 to the Labor and Workforce Development Agency and the Defendants providing notice of the specific provisions of the Labor Code violated by the Defendants and the facts and theories supporting the violations. SAC ¶ 68; Katz Dec. Exh. 6. Plaintiffs stated there that they and other aggrieved employees had been employed by the Defendants as employees and had all worked for Defendants and suffered from violations alleged in the Eighth Cause of Action for which

penalties are sought, *viz.*, Cal. Lab. Code§§ 204, 558, 1197, and the Wage Order mandating the payment of minimum wages; Cal. Lab. Code§§ 558 and 1198 and the Wage order requiring overtime payment for overtime hours worked; Cal. Lab. Code§§ 201 and 202 for failure to pay all wages due upon termination or quit; Cal. Lab. Code§§ 226.7 and 558, mandating meal and rest periods and payment of premium compensation when not provided; and and California Labor Code section 226(a) requiring accurate itemized wage statements. SAC ¶ 67(a)-(c), (e), (f); Katz Dec., Exh. 7.  The LWDA did not provide notice to Plaintiffs or their counsel within 33 days of the mailing of that letter of their intent to proceed with an action or citation regarding the violations alleged in the May 14, 2013 letter.  Katz Dec. ¶10. Plaintiffs properly gave notice of the above violations and the facts and theories in support thereof and were entitled to bring this action.

> ### b.   PAGA Penalties Due Plaintiffs

- **Cal. Labor Code § 1197.1 Penalties, Failure to Pay Minimum Wages Due.**

Plaintiffs each suffered a minimum wage violation when they were not paid all wages due for hours worked for Defendants.  Civil Penalties are due pursuant to Cal. Labor Code § 1197.1 at the rate of $100 per Plaintiff, for the first pay period, and $ 250 per Plaintiff, per pay period for each subsequent violation. Penalties were calculated using these amounts for each pay period each Plaintiff worked.  Pursuant to Cal. Lab. Code § 2699 75% of these penalties are allocated to the LWDA and 25% to the Plaintiff/aggrieved employees which yields the following amounts due Plaintiffs and the LWDA:

**Marquez:**   **$2,587.50** (Rice Dec. Summary Exhibit 1, last page Column 16)
**LWDA:**   **$7,762.50**

**Cano:**   **$962.50** (Rice Dec., Summary Exhibit 2, Section 1, Column 16)
**LWDA:**   **$2,887.50**

**Reyes:**   **$962.50** (Rice Dec., Summary Exhibit 2, Section 1, Column 16)
**LWDA**:   **$2,887.50**

- **Cal. Lab. Code§ 226, Penalties, Failure to Maintain Records.**

Cal. Lab. Code§ 226 requires that employers provide a wage statement with each periodic payment of wages.   Defendants failed to provide any wage statement to Plaintiffs. SAC ¶ 48-51.   Marquez Dec ¶17; Cano Dec ¶¶3, 15; Reyes Dec. ¶¶3, 14.   Civil penalties for this violation are available in addition to the damages available pursuant to Cal. Lab. Code § 226(f).   Cal. Lab. Code § 226.3which provides for a civil penalty of $250 per violation. Although the workers were paid irregularly,  but often weekly, the pay period was assumed to be the work week.   Pursuant to Cal. Lab. Code § 2699 75% of these penalties are allocated to the LWDA and 25% to the Plaintiff/aggrieved employees which yields the following amounts due Plaintiffs and the LWDA:

| | |
|---|---|
| **Marquez:** | **$2,625.00** (Rice Dec. Summary Exhibit 1, last page Column 17) |
| **LWDA:** | **$7,875.00** |
| **Cano:** | **$1000.00** (Rice Dec., Summary Exhibit 2, Section 1, Column 17) |
| **LWDA:** | **$3000.00** |
| **Reyes:** | **$1000.00** (Rice Dec., Summary Exhibit 2, Section 1, Column 17) |
| **LWDA**: | **$3000.00** |

- **Cal. Lab. Code§ 2699 Penalties, Failure to Pay Wages Due Upon Termination.**

"If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter . . ." Cal. Lab. Code § 202.  Plaintiffs each voluntarily quit.  Their wages were not paid within 72 hours of their termination, as required by Cal. Labor Code section 201.  SAC ¶¶ 53, 58, 67(c); Marquez Dec ¶¶9, 18; Cano Dec. ¶¶9, 10, 16; Reyes Dec. ¶¶ 8, 9, 15.  As there is no specific civil penalty attached to section 201, penalties are due pursuant to Cal. Labor Code § 2699(f) at the rate of $100.00 per Plaintiff per pay period in which the violation occurred.  For this purpose of this violation penalties were calculated assuming one violation per Plaintiff per year.   Pursuant to Cal. Lab. Code § 2699 75% of these penalties are

allocated to the LWDA and 25% to the Plaintiff/aggrieved employees which yields the following amounts due Plaintiffs and the LWDA:

| | | |
|---|---|---|
| **Marquez:** | **$25.00** | (Rice Dec. Summary Exhibit 1, last page Column 18) |
| **LWDA:** | **$75.00** | |
| **Cano:** | **$25.00** | (Rice Dec., Summary Exhibit 2, Section 1, Column 18) |
| **LWDA:** | **$75.00** | |
| **Reyes:** | **$25.00** | (Rice Dec., Summary Exhibit 2, Section 1, Column 18) |
| **LWDA**: | **$ 75.00** | |

- **Cal. Lab. Code § 558 Penalties, Failure to Pay Overtime**

Plaintiffs suffered a violation of Cal. Lab. Code § 558 when they were not paid overtime in accordance with the applicable overtime wages due. *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1144-45 (2012).   Section 558 provides that:

> Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows:
> (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.
> (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages.

Cal. Lab. Code § 558.  Plaintiffs' underpaid wages have already been accounted for in the damages recovery; therefore, the PAGA penalty for Plaintiffs is calculated at the rate of at the rate of $50 per Plaintiff for the first pay period, and $100 per Plaintiff, per pay period for each subsequent violation. Pursuant to Cal. Lab. Code § 2699 75% of these penalties are allocated to the LWDA and 25% to the Plaintiff/aggrieved employees which yields the following amounts due Plaintiffs and the LWDA:

**Marquez:**     **$1,037.50**   (Rice Dec. Summary Exhibit 1, last page Column 20)

| **LWDA:** | **$3,112.50** |
|---|---|

**Cano:**   **$ 387.50**  (Rice Dec., Summary Exhibit 2, Section 1, Column 20)
**LWDA:**   **$1,162.50**

**Reyes:**   **$ 387.50** (Rice Dec., Summary Exhibit 2, Section 1, Column 20)
**LWDA**:   **$1,162.50**

- **Cal. Lab. Code§ 558 Penalties, Failure to Pay Premium Pay Due for Meal and Rest Period Violations**

Plaintiffs suffered a violation of Labor Code section 226.7 when they were not provided mandated meal and/or rest periods and then not paid premium pay for meal and rest periods they were denied.  SAC ¶¶ 41-47, 67(2).  Failure to pay this premium pay is considered a failure to pay wages and gives rise to civil penalties pursuant to Cal. Lab. Code§ 558;

Plaintiffs' underpaid wages have already been accounted for in the damages recovery; therefore, the PAGA penalty for Plaintiffs is calculated at the rate of at the rate of $50 per Plaintiff for the first pay period, and $100 per Plaintiff, per pay period for each subsequent violation. Pursuant to Cal. Lab. Code § 2699 75% of these penalties are allocated to the LWDA and 25% to the Plaintiff/aggrieved employees which yields the following amounts due Plaintiffs and the LWDA:

**Meal Period Violations:**

**Marquez:**   **$1,037.50**  (Rice Dec. Summary Exhibit 1, last page Column 20)
**LWDA:**    **$3,112.50**

**Cano:**    **$ 387.50**  (Rice Dec., Summary Exhibit 2, Section 1, Column 20)
**LWDA:**    **$1162.50**

**Reyes:**   **$ 387.50** (Rice Dec., Summary Exhibit 2, Section 1, Column 20)
**LWDA**:    **$1162.50**

**Rest Period Violations:**

| | | |
|---|---|---|
| **Marquez:** | **$1,037.50** | (Rice Dec. Summary Exhibit 1, last page Column 20) |
| **LWDA:** | **$3,112.50** | |
| | | |
| **Cano:** | **$ 387.50** | (Rice Dec., Summary Exhibit 2, Section 1, Column 20) |
| **LWDA:** | **$1162.50** | |
| | | |
| **Reyes:** | **$ 387.50** | (Rice Dec., Summary Exhibit 2, Section 1, Column 20) |
| **LWDA**: | **$1162.50** | |

### c.    PAGA Penalties Due Other Aggrieved Employees

"The PAGA 'permits a civil action 'by an aggrieved employee on behalf of himself or herself and other current or former employees' to recover civil penalties for violations of other provisions of the Labor Code.'" *Amalgamated Transit Union v. Sup. Ct.*, 46 Cal. 4th 993, 1001 (2009) (quoting Cal. Lab. Code § 2699).

Labor Code sections 558 also allows an aggrieved plaintiff to recover wages on behalf of other current or former aggrieved employees.  These wages are considered PAGA penalties. *Thurman*, 203 Cal. App. 4th at 1148 (holding that "an aggrieved employee acting as the LWDA's proxy or agent by bringing a PAGA action may likewise recover underpaid wages as a civil penalty under section 558") (relying on *Reynolds v. Bement*, 36 Cal.4th 1075, 1094 (2005, conc. opin. of Moreno, J.).  But they are not split between the state and the workforce; they are "paid to the affected employee." Cal. Lab. Code § 558(a)(3).  Wages recoverable under these provisions include rest and meal period premiums. *Culley v. Lincare Inc.*, 236 F. Supp. 3d 1184, 1197 (E.D. Cal. 2017).

Plaintiffs have calculated the amount of underpaid wages, and penalties due to other aggrieved employees.  Civil Penalties are due under Cal. Lab. Code sections 226.3 (wage statement violations), 210 (failure to timely pay wages when due); 558 (failure to pay premium pay for denied meal and rest periods); 1197.1 (failure to pay minimum wages due) and 2699(f) (failure to pay wages due upon termination).  Plaintiffs have determined the amount of PAGA penalties and underpaid wages due from testimony of the Plaintiffs, based

on the number of total possible work weeks within the PAGA penalty period, and the number of labor law violations suffered by the one or two crew members in addition to the Plaintiffs. Marquez Dec. ¶¶ 4, 7, 8, 9, 10, 11, 16, 17, 18.  Plaintiffs multiplied the number of work weeks (taking the total number of weeks worked by all of the other aggrieved employees within the one year period prior to May 14, 2013, to date, multiplied by the applicable PAGA penalties for each work week to determine total PAGA liability.

Plaintiffs used the same formulas used to calculate the penalties owed them, to calculate the penalties owed the other aggrieved employees.  Based on the  estimated number of workers as testified to by Plaintiff Marquez, and the work weeks worked by the other Plaintiffs a penalty was applied for one additional worker for the period between May 12, 2012 through September 1, 2012, and for two workers for each work week for the period between September 2, 2012 through March 2, 2013 (the date the last Plaintiff terminated). Rice Dec. ¶ 5(c), (d) and (h).

- **PAGA Underpaid Wages Due and Penalties Other Aggrieved Employees For Violation of the Meal and Rest Period Provisions**

Pursuant to Cal. Lab. Code § 558 and Cal. Lab. Code § 226.7, the other aggrieved employees are entitled to recover the unpaid premium wages due as well for each day a meal period was denied and each day a rest period was denied.  100% of the underpaid premium wages is allocated to the aggrieved employees. The penalties are calculated based on $50.00 for the first pay period and $100.00 for each subsequent pay period when the meal and rest periods were not provided.  Using this formula the following PAGA penalties, including underpaid wages due are:

Underpaid Wages and Penalties Due for the Period May 13, 2012-September 1, 2012

**Meal Period Wages:**     **$896.00** (Summary Exhibit 2, Section 3 Column 12)

**Meal Period Penalties Emees:  $387.50** ( Summary Exhibit 2, Section 3 Column 19)

**Meal Period Penalties LWDA: $1,162.50** (Summary Exhibit 2, Section 3 Column 19)

**Rest Period Wages:      $896.00** (Summary Exhibit 2, Section 3 Column 14)

**Rest Period Penalties Emees: $387.50** (Summary Exhibit 2, Section 3 Column 20)

**Rest Period Penalties LWDA:  $1,162.50** (Summary Exhibit 2, Section 3 Column 20)

Underpaid Wages and Penalties Due for the Period September 2, 2012 – March 2, 2013

**Meal Period Wages:   $2,912.00** (Summary Exhibit 2, Section 4 Column 12)

**Meal Period Penalties Emees: $1,275.00** ( Summary Exhibit 2, Section 4 Column 19)

**Meal Period Penalties LWDA: $3,825.00** (Summary Exhibit 2, Section 4 Column 19)

**Rest Period Wages:      $2,912.00** (Summary Exhibit 2, Section 4 Column 14)

**Rest Period Penalties Emees: $1,275.00** (Summary Exhibit 2, Section 4 Column 20)

**Rest Period Penalties LWDA:  $3,825.00** (Summary Exhibit 2, Section 4 Column 20)

- **PAGA Penalties Due Other Aggrieved Employees For Failure to Pay Minimum Wages Due**

    Plaintiffs have established that all of the workers were required to wait for pickup and be transported to and from the job site, but were only paid for the actual hours at the hotel. Marquez Dec. ¶7, 8, 11, 12.  While it is not possible to calculate the underpaid wages due these employees, they are entitled to the civil penalty established by Cal. Lab. Code § 1197.1 of $100.00 for the initial violation and $200.00 for each subsequent violation.  Applying these formulas yields the following amounts due the other aggrieved employees and the LWDA for one employee for the period between May 13, 2002-September 1, 2012 and 2 employees for the period between September 2, 2013 and October 20, 2013:

Penalties Due for the Period May 13, 2012-September 1, 2012

**Min. Wage Penalties Emees:  $962.00** (Summary Exhibit 12, Section 3 Column 16)

**Min. Wage Penalties LWDA: $2,887.50** (Summary Exhibit 12, Section 3 Column 16)

Penalties Due for the Period September 2, 2012 – March 2, 2013

**Min. Wage Penalties Emees:  $3,250.00** (Summary Exhibit 12, Section 4 Column 16)

**Min. Wage Penalties LWDA: $9,750** (Summary Exhibit 12, Section 4 Column 16)

- **PAGA Penalties Due Other Aggrieved Employees For Failure to Pay Overtime Wages Due**

Penalties Due for the Period May 13, 2012-September 1, 2012

**Overtime Wage Penalties Emees:  $387.50** (Summary Exhibit 12, Section 3, Column 19)

**Overtime Wage Penalties LWDA: $1,162.50** (Summary Exhibit 12, Section 3,Column19)

Penalties Due for the Period September 2, 2012 – March 2, 2013

**Overtime Wage Penalties Emees: $1,275** (Summary Exhibit 12, Section 4, Column 19)

**Overtime Wage Penalties LWDA: $3,825** (Summary Exhibit 12, Section 4,Column19)

- **PAGA Penalties Due For Failure to Pay Wages Due Upon Termination**

Since all of the Defendants have ceased doing business, all other aggrieved employees are due penalties for violation Cal. Lab. Code § 201 or 202. That penalty is established by Cal. Lab. Code § 2699(f).  It is presumed that at least one  to two  other aggrieved employees terminated without being paid all wages due.

Penalties Due for the Period May 13, 2012-September 1, 2012

**Termination Penalties due Emees:  $25.00** (Summary Exhibit 12, Section 3, column 18)

**Termination Penalties due LWDA:  $75.00** (Summary Exhibit 12, Section 3, column 18)

Penalties Due for the Period September 2, 2012- March 2, 2013

**Termination Penalties due Emees:  $50.00** (Summary Exhibit 12, Section 4,column 18)

**Termination Penalties due LWDA:  $150.00** (Summary Exhibit 12, Section 4,column 18)

10.    Plaintiffs Are Entitled to An Award of Attorneys' Fees and Costs.

Plaintiffs are entitled to recover attorneys' fees and costs for the violations that they were subjected to as provided in the FLSA, 29 U.S.C. § 216 (b), California Labor Code sections 1194, 1194.2, 1695.7(c)(4), and 2699.  Plaintiffs' counsel have expended 622.45 hours connected with the litigation of this case, including discovery conducted as to Defendant Javier Agustin, and the Hyatt Defendants, which was necessary to obtain enough information to determine the remaining defendants' liability.  Based on the reasonable hourly rates of Plaintiffs' attorneys, and after adjustment to avoid duplication Plaintiffs seek an award of $ 151,564.37 in attorneys' fees, plus an additional amount of $3,556.87 for costs. Katz Dec. ¶¶ 13, 14, 15, 16, 17 and Exh. 11 and 12; Rice Dec ¶¶ 5-9.

"When determining the reasonable hourly rate, the court must weigh the 'experience, skill, and reputation of the attorney requesting fees,' and compare the requested rates to prevailing market rates. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986) opinion amended on denial of reh'g, 808 F.2d 1373 (9th Cir. 1987); see also *Blum v. Stenson*, 465 U.S. 886, 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)." *Lenk v. Monolithic Power Sys.*, 2018 U.S. Dist. LEXIS 9109, *23 (2018 N.D. Cal.) Plaintiffs seek fees based on the following rates for attorneys serving as lead counsel at various times in the case based on their years in practice and experience: $400.00,  Elena Dineen, admitted in 2009; $400.00, Maureen Keffer, admitted in 2011, $550, Phyllis Katz, admitted in 1988.  Additionally fees are sought for senior counsel, Cynthia L. Rice (admitted in 1979)  at the rate of $750.00 based on her years in practice, and her particular expertise regarding PAGA cases.  Rice Dec. ¶¶ 5-9.  The hours, and rates requested for Plaintiffs' counsel are comparable to those approved in other wage and hour litigation in the Northern District.[7]  See, e.g., *Schuchardt v. Law Office*

---

[7] Prevailing rates may be determined based on the rates awarded by other courts in the same

(continued . . .)

*of Rory W. Clark, supra,* 314 F.R.D. 673 [lead counsel with approximately 10 years in practice awarded rate of $400.00 per hour]; *Guerrero v. Cal. Dep't of Corr. & Rehab.,* 2016 U.S. Dist. LEXIS 78802, *11-12, 2016 WL 3360638 (N.D Cal. June 16, 2016) [special master recommending rate of $358.00 per hour for work performed in 2012 through 2015 by an attorney that graduated in 2010, an hourly rate of $753.50 for an attorney with over 20 years of related experience, rates of $754.00 and $775.00 for attorneys with over 40 years of related experience]; *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, 2017 U.S. Dist. LEXIS 105521, *6, 2018 WL 2412137 (N.D. CA 2017) [rates of $600.00 per hour for attorneys with over twenty years of experience and $425.00 and $350.00 per hour for attorneys with seven and thirteen years of experience respectively, were reasonable when used to determine whether percentage of recovery award was reasonable]; *Van Kempen v. Matheson Tri-Gas, Inc*., 2017 U.S. Dist. LEXIS 137182, *22-24, 2017 WL 3670787, at *9 (N.D. Cal. Aug. 25, 2017) [rates of $300.00, $580.00 and $800.00 reasonable when used to determine whether percentage of recovery award reasonable.] These rates are also in line with awards made in other types of cases in the Northern District. "In the Bay Area, 'reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support staff from $150 to $240.'" *In re LinkedIn User Privacy Litig*., 309 F.R.D. 573, 591-92 (N.D. Cal. 2015), cited with approval in *Lenk v. Monolithic Power Sys*, *supra,* 2018 U.S. Dist. LEXIS 9109, *24-26 [awarding fees to defendants in Title VII action at "discounted" rates of $235.00 and $415.00]. See also, *Garcia v. Stanley*, 2017 U.S. Dist.

---

district. (*Schuchardt v. Law Office of Rory W. Clark,* 314 F.R.D. 673, 689 (2016, N.D. Cal.)) Based on the review of cases decided in the U.S. District Courts for the Northern District of California Plaintiff has reduced the hourly rate requested for two of the attorneys who worked on this case and reduced the total number of hours requested.

LEXIS 32550, §11 (N.D. Cal., March 7, 2017 [approving rates of $400.00 and $500.00 for attorneys with 9 and 19 years of related experience in a consumer action]; *Cuviello v. Feld Entm't, Inc*., 2015 U.S. Dist. LEXIS 4155, *5-6, 2015 WL 154197, at *2-*3 ( N.D. Cal., January 12, 2015 [approving rates for partners at $725.00 and $ 695.00 and a senior associate at $455.00] *and Gonzales v. City of San Jose*, 2016 U.S. Dist. LEXIS 69390, *9-14(N.D. Cal., May 26, 2016) [approving rates of $625.00 per hour for an attorney with nearly 20 years of experience, $575.00 per hour for a lead/managing attorney with 10 years of legal experience, $450.00 per hour for an associate with 23 years of experience and $425.00 per hour for an associate with 12 years of experience].

Based on a review of the applicable case law, and taking into consideration the guideline that fees generally should not exceed more than 25% in a percentage of recovery award[8], but adjusting that to reflect the complexity of the case, Plaintiffs are seeking fees at the rate of 50% of their lodestar, equaling $151,564.37.

## C.   THERE IS NO SIGNIFICANT DISPUTE AS TO SIGNIFICANT ALLEGATIONS IN THE COMPLAINT

The fact that workers are owed wages is uncontested.  Defendant Pascariello, principal of N.L.P. Janitorial, has refused to defend herself or comply with court orders, leading to the court's March 28, 2018 decision to strike her answer. NLP Janitorial, Inc. never responded to the properly served complaint and default was taken in 2014. Katz Dec. Exh. 13. Coast to Coast West, Inc. was also properly served, and its default was taken in 2014. Katz Dec. Exh. 13.

---

[8]  See, eg, In *re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 942 (9th Cir. 2011) ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

Thus, the principal question in this case is how much is owed in wages and penalties to the workforce and the state.  Plaintiffs' damages and penalties are based on their testimony, which was not refuted by the Defendants.

The calculation of PAGA penalties due was taken from declaration testimony of Plaintiff Amelia Marquez.  Dec Maquez ¶¶ 4-18.  That Plaintiff Marquez did not work alone is corroborated by the declaration of Plaintiffs Lorenzo Diego Cano and Maria Tonayan Reyes. Cano Dec ¶¶ 3-16, Reyes Dec ¶¶ 3-15. It is further corroborated by documents provided by the Hyatt defendants. Katz Dec. Exh. 3B.  This is the most reliable evidence available for both Plaintiffs and other aggrieved employees given Defendants' failure to maintain records.

**D.**   **DEFENDANTS ARE NOT UNFAIRLY PREJUDICED AS THEY HAD AMPLE OPPORTUNITY TO DEFEND THE ALLEGATIONS AND PRODUCE EVIDENCE AND DEFAULT WAS ENTERED BECAUSE OF THEIR FAILURE TO DO SO**

Pascariello and her company NLP Janitorial have been on notice of the serious nature of the allegations against them since 2013. Coast to Coast West, Inc. has also been duly served and had the opportunity to respond. Entry of judgment on default is likely the only way to obtain relief from these defendants.  "Plaintiff would suffer prejudice if the default judgment is not entered because Plaintiff would be without other recourse for recovery." *Philip Morris U.S.A.*, 219 F.R.D. at 499-502 (applying the *Eitle* factors).

Defendants were provided notice of Plaintiffs' complaints on behalf of themselves and other aggrieved employees through Plaintiffs' December 26, 2012 and May 14, 2014 letters to them and the LWDA.  Katz Dec. Exh. 7.  Pascariello was properly served, obtained counsel, and responded to initial discovery requests.  When she later lost counsel, Plaintiffs granted additional time to permit her to hire a new attorney.  She has since failed to respond

to all communication, from the Plaintiffs and from the court, leading to this court's order striking her answer and entering default.  (Case 5:15-cv-06089-BLF, Document 65, filed March 29, 2018.)  Defendant's refusal to defend herself is not the basis for denying entry of a money judgment.

### E.   THE MONETARY RECOVERY IS NOT EXCESSIVE, OR SPECULATIVE AND IS BASED ON INFORMATION FROM RECORDS PREPARED BY DEFENDANTS

The total judgment sought against Pascariello, NLP Janitorial, Inc., and Coast to Coast West, Inc. collectively is $381,264.09,   $215,708.48 in underpaid wages, liquidated damages, interest, statutory penalties and PAGA penalties (Rice Dec. ¶ 11, Exh. 3); and 151,564.37 in attorneys fees and costs.

$109,942.48 is to be distributed to  Plaintiffs,  as $95,292.48 in underpaid wages, statutory penalties, interest and liquidated damages   and $14,650.00 as their 25% portion of the PAGA penalties.  Rice Dec ¶ 11, Exh. 3.

The separate award of PAGA penalties for other aggrieved employees is $21,166.00 which includes underpaid wages in the of $ $7,616.00,  , plus $6,300.00,  which represents 25% of the applicable PAGA civil penalties. Rice Dec. ¶ 11, Exh. 3.

$84,600 is to to be paid to the LWDA, representing 75% of the PAGA penalties.  Rice Dec. ¶ 11, Exh. 3.

Additionally, Plaintiffs seek $151,564.37 in attorneys' fees and costs.

Although these amounts are significant, they should come as no surprise to the Defendant since each violation and the basis for recovery was provided to them both in the various iterations of the complaint and for the PAGA violations, in May of 2014.  Katz Dec.¶ 9, Exh. 7.  Other courts have recognized that default judgment entered for a single plaintiff against a defaulting entity were not excessive, even though over one million dollars.

*NewGen,* 840 F.3d at 617 (upholding the district court's damage award of $1,483,075.84, based on the detailed declaration of damages submitted by the Plaintiff). The amounts requested are not "'illogical,' 'implausible,' or without "support in inferences that may be drawn from facts in the record…" *Id*. at 616; *see also Philip Morris U.S.A.,* 219 F.R.D. at 500, awarding $2,000,000 in statutory damages.

The court may feel that some of the penalties sought are duplicative, in that they arise from similar behavior. However, it is important to note that each one of these penalties is designed to create a disincentive to exactly the type of activities engaged in by the Defendants. This is acknowledged in the language of these penalty statutes. Cal. Lab. Code§ 2699 begins with the phrase "Notwithstanding any other provision of law…." Cal. Lab. Code§ 1197.2 begins "In addition to any other penalty imposed by law…" Cal. Lab. Code§ 210 begins "In addition to, and entirely independent and apart from, any other penalty provided in this article . . ." Clearly the California legislature intended these penalties to be in addition to the recovery provided for workers under other statutes, and that intent should be followed with respect to any entry of judgment.

It is also important to remember that the vast majority of the PAGA penalties except for underpaid wages due (75% of all penalties) will go to the LWDA, and not workers. Cal. Lab. Code § 2699 (i). This will not create a windfall for Plaintiffs, or for the other aggrieved employees. It will, hopefully, create the financial disincentive needed to stop the Defendants from engaging in this pattern and practice of worker exploitation, while providing some limited compensation to the workers who endured this unfair treatment.

The PAGA expressly provides that a court may award a lesser amount than the maximum civil penalty amount if, "based on the facts and circumstances" of the case it would otherwise result in an award that is "unjust, arbitrary, oppressive, or confiscatory." Cal. Lab.

Code § 2699 (e)(2).  This provision provides the discretion for courts to use this section to eliminate duplicate penalties for the same violation; to reduce penalties when the aggrieved employees suffered no actual injury, *Fleming v. Covidien, Inc.*, 2011 WL 7563047, *4 (C.D. Cal. 2011)  ), defendants lacked knowledge or intent (*id.*), or the law was unclear (*Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016)) (approving reduced penalties as part of a settlement agreement).  Plaintiffs do not believe that this is appropriate, particularly given that the underpaid wages amount due the PAGA other aggrieved employees cannot be determined.

### F. PAGA FUNDS FOR THE OTHER AGGRIEVED EMPLOYEES SHOULD BE PAID TO THE LWDA, AND HELD UNTIL EMPLOYEES COME FORWARD AND CLAIM THEIR SHARE

Given that this is a default judgment, and Plaintiffs have no information about the identities of the other aggrieved employees.   Plaintiffs propose that the court retain jurisdiction of this matter for the purposes of overseeing collection.  In the event that funds are collected, Plaintiffs propose that they be distributed/allocated in the first instance to Plaintiffs, for their individual causes of action, including attorneys' fees and costs, then to the LWDA who will both recover the amounts due the agency and hold the amounts due the PAGA aggrieved employees for underpayment of wages due and their 25% penalty distribution.

### V. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the court enter judgment for damages, penalties, interest and attorneys' fees and costs jointly and severally against Pascariello and NLP Janitorial, Inc. as follows:

Damages, and Statutory Penalties awarded to Plaintiffs,

**Plaintiff Marquez: $79,824.00**

1

2

**Plaintiff Cano: $8,231.30**

**Plaintiff Reyes: $7,237.16**

3

4

PAGA Penalties in the aggregate arising from violations suffered by Plaintiffs, 25%

5

6

payable to Plaintiffs and 75% payable to the California Labor and Workforce Development

Agency as follows:

7

8

**Plaintiff Marquez: $8,350**

9

10

**Plaintiff Cano: $3,150**

**Plaintiff Reyes: $3,150**

11

**LWDA: $ 43.950**

12

13

PAGA Penalties in the aggregate arising from violations suffered by other aggrieved

14

employees, including 100% of underpaid wages and 25% of penalties payable to other

15

16

aggrieved employees and 75% of penalties payable to the California Labor and Workforce

Development Agency, as follows:

17

18

**Other Aggrieved Employees: $15,329.16**

**LWDA: $40, 650**

19

20

Pre-Judgment Interest for the Plaintiffs as follows:

21

22

**Plaintiff Marquez:   $11,607**

**Plaintiff Cano:        $1,293.65**

23

**Plaintiff Reyes: $1,090.58**

24

25

Attorneys fees in the amount of $148,007.50; and

Costs in the amount of $3,556.87;

26

27

And that an injunction enter as to Defendants pursuant to California Business and

28

Professions Code section 17203, Cal. Lab. Code§ 1695.7(c)(4) and Federal Rule of Civil

Procedure directing that they:

1.  Provide itemized wage statements to all employees;

2.  Cease misclassifying janitorial employees as independent contractors;

3.  Make only authorized deductions from employees' pay;

4.  Compensate employees for time spent travelling in required employer-provided transportation;

5.  Provide meal periods and rest periods;

6.  Pay premium pay compensation of one hour of pay at the regular rate of compensation to any worker denied a meal or rest period;

7.  Pay all wages due, including premium pay compensation, on the predesignated day for payment, no less frequently than every two weeks;

8.  Pay all wages due, including premium pay compensation, on the day of termination for every worker discharged by you and on the day of termination, or within 72 hours of notice that a worker is voluntarily terminating;

8.  And that the court retain jurisdiction for the purpose of reviewing a proposal for distribution to other aggrieve employees and the LWDA of any funds collected from the Defendants.


Respectfully submitted,


Dated: November 12, 2018            CALIFORNIA RURAL LEGAL ASSISTANCE, INC


By:  ___/s/Phyllis Shafton Katz_____
                    Attorneys for Plaintiffs