**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| AMELIA MARQUEZ, ET AL.,<br>Plaintiffs,<br>v.<br>NLP JANITORIAL, INC., et al.,<br>Defendants. | Case No. 16-cv-06089-BLF<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT; VACATING MAY 23, 2019 HEARING**<br>[Re: ECF 78, 79] |

Plaintiffs Amelia Marquez, Lorenzo Diego Cano, Maria Tonayan Reyes, and Aaron Lugo Hernandez (collectively, "Plaintiffs") have moved for the entry of default judgment against Defendant janitorial services business NLP Janitorial, Inc., as well as the principal of that company, defendant Nicole Pascariello, and Defendant Coast to Coast West, Inc. (collectively, "Defendants"). ECF 78; Mot., ECF 79. Plaintiffs seek damages and statutory penalties, as well as injunctive relief, for Defendants' violations of state and federal labor laws. The Court finds that the motion is appropriate for submission without oral argument. *See* Civ. L.R. 7-1(b). Accordingly, the hearing set for May 23, 2019 is VACATED. For the following reasons, Plaintiffs' Motion for Default Judgment is GRANTED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendants NLP Janitorial, Inc. ("NLP"), Coast to Coast West, Inc. ("CTC"), and Nicole Pascariello (collectively, "Defendants") are a group of corporations, partnerships, and individuals operating a large janitorial contracting business in California. Second Am. Compl. ("SAC") ¶¶ 1, 16, ECF 1-2. Plaintiffs worked as nighttime cleaning crew for Defendants at the Hyatt Carmel Highlands hotel in Monterey County for various periods of time between September 2008 and March 2013. Plaintiffs allege that they generally worked six to seven hours per night, seven

nights per week, except during special events when they worked up to ten hours per night. *Id.* ¶ 20. Plaintiffs' supervisors transported Plaintiffs to and from work, directed them about when to begin and end work, assigned them tasks at the work site, told them which tools and supplies to use to perform their work, and told them when and whether they could take rest breaks. *Id.* ¶¶ 18–19.

According to Plaintiffs, they were paid a set amount of money per week, regardless of the number of hours they worked, such that Defendants failed to pay Plaintiffs the applicable minimum wage and overtime wages. *Id.* ¶ 20. Defendants also told Plaintiffs not to take meal or rest periods and made nonconsensual deductions from Plaintiffs' pay for equipment and supplies, missed workdays, and check-cashing fees. *Id.* ¶¶ 21, 23. Defendants also allegedly withheld Plaintiffs' wages for the first several weeks of their employment, failed to pay all wages due when Plaintiffs quit, and failed to provide Plaintiffs with accurate itemized wage statements. *Id.* ¶¶ 22, 24. And Defendants knowingly misclassified Plaintiffs as independent contractors instead of employees. *Id.* ¶ 25. Finally, Plaintiff Marquez alleges that she was paid through direct deposit without authorization, such that she had to pay a fee each time she withdrew the funds, and she received her pay several weeks late on one occasion. *Id.* ¶ 26.

Based on the foregoing, on February 19, 2014 Plaintiffs filed a complaint in Monterey Superior Court against Defendants NLP; Pascariello; CTC; Winters Company d/b/a Winters Janitorial; Robert Winters; and Augustin Janitorial, LCC (collectively, "Original Defendants"). Not. of Removal ¶ 2, ECF 1. They alleged that each Defendant was an agent of every other Defendant, and specifically that Pascariello was a supervisorial employee and/or agent of NLP and CTC. SAC ¶¶ 9, 14. On May 4, 2016, Plaintiffs added new defendants Hyatt Corporation, Highlands Inn Investors II, LP and Interval Leisure Group, Inc. (collectively, "Hyatt Defendants"). On September 14, 2016, Plaintiffs filed a Second Amended Complaint. Not. of Removal ¶ 6. Based on Defendants' alleged actions, Plaintiffs brought the following causes of actions: (1) failure to pay state or federal minimum wages in violation of Cal. Labor Code § 1197; (2) failure to pay overtime wages in violation of Cal. Labor Code §§ 510 and 1198; (3) on behalf of themselves and others similarly situated, failure to pay overtime wages in violation of the Fair

Labor Standards Act, 29 U.S.C. §§ 207, 216(b); (4) failure to provide meal periods and authorize and permit rest periods in violation of Cal. Labor Code §§ 226.7 and 512; (5) failure to provide accurate itemized wage statements in violation of Cal. Labor Code § 226(a); (6) failure to pay all wages due upon discharge or resignation in violation of Cal. Labor Code §§ 202 and 203; (7) unlawful competition in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (8) labor code violations under the Private Attorneys General Act, Cal. Labor Code §§ 2698, *et seq.*; and (9) failure to sufficiently fund contract for janitorial services in violation of Cal. Labor Code § 2810, as to only Original Defendants who are no longer defendants in this action. Plaintiffs requested compensatory and liquidated damages, as well as restitution, injunctive relief, and attorney's fees and costs. *See generally* SAC.

On July 27, 2014, the state court entered default against CTC, and on October 3, 2014, the state court entered default against NLP. *See* Katz Decl., Ex. 13, ECF 79-18. According to documents previously filed in this case, but not submitted with the instant motion, the state court again entered default against NLP and CTC on March 22, 2016, this time including a court judgment with an indication that a default prove-up was necessary. *See* ECF 37-2, 37-3.

On October 21, 2016, Defendants removed the action to federal court. *See* Not. of Removal. The Hyatt Defendants indicated that Defendant Pascariello consented to the removal on behalf of herself and as principal of NLP, as did Robert Winters, principal of CTC. *Id.* ¶ 13. In May 2017, Plaintiffs and the Hyatt Defendants settled, and in December 2017 the Court approved the settlement. *See* ECF 50. On October 18, 2017, Plaintiffs voluntarily dismissed Defendants Robert Winters d/b/a Winters Janitorial, and Augustine Janitorial, LLC. Because Pascariello filed an Answer in Superior Court, Plaintiffs sought to compel discovery or sanctions as a result of her failure to participate in the action, which the Court granted. *See* ECF 51, 62. Pascariello never produced the compelled discovery. *See* ECF 55. On February 21, 2018, the Court issued an Order to Show Cause why Pascariello's Answer should not be stricken and entry of default should not be entered against her. *See* ECF 62. Pascariello never responded, and the Court struck her Answer and entered default pursuant to Rule 55(a) on March 29, 2018. ECF 65. Pascariello has not filed a single document in this action since removal.

On July 18, 2018, Plaintiffs moved for default against NLP and Pascariello. On November 12, 2018, Plaintiffs amended their motion for default to include CTC.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b), the Court may enter default judgment against a defendant who has failed to plead or otherwise defend an action. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F. 2d 1089, 1092 (9th Cir. 1980).

In exercising its discretion to enter default judgment, a district court considers seven factors set forth by the Ninth Circuit in *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) ("*Eitel* factors"): (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. In considering these factors after a clerk's entry of default, the court takes all well-pleaded factual allegations in the complaint as true, except those with regard to damages. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). The Court may, in its discretion, consider competent evidence and other papers submitted with a motion for default judgment to determine damages. *Id.*

## III. DISCUSSION

### A. Adoption of Entry of Default and Default Judgment as to Defendants NLP Janitorial, Inc. and Coast to Coast West, Inc.

"After removal, the federal court takes the case up where the State court left it off." *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 436 (1974) (internal quotation marks omitted). "The federal court . . . treats everything that occurred in the state court as if it had taken place in federal court." *Butner v. Neustadter*, 324 F.2d 783, 785 (9th Cir. 1963). Consequently, an order entered by a state court "should be treated as though it had been validly rendered in the federal proceeding." *Id.* at 786; *see also Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 887 (9th Cir. 2010). Here, the state court entered default and a default judgment against NLP and

4

CTC, with the default judgment subject to proof of damages by Plaintiffs. Because the Court is bound by the state court's order, the Court GRANTS Plaintiffs' Motion for Default Judgment as to NLP and CTC.

### B. *Eitel* Factors as to Pascariello

All seven of the *Eitel* factors weigh in favor of granting Plaintiffs' motion as to Pascariello. First, prejudice would befall the Plaintiffs were default judgment to be denied because Pascariello refuses to litigate this action. Plaintiffs would then be left without recourse and would be denied their earned, but unpaid, wages.

Next, both the second and third *Eitel* factors weigh in favor of entering default judgment against Pascariello. Plaintiffs' substantive claims appear meritorious, and their Complaint is sufficiently pled. The FLSA covers enterprises who are engaged in commerce or whose employees are engaged in commerce. 29 U.S.C. §§ 207(a)(1). Defendants are, or own and operate, a janitorial service employed by hotels, which engages in commerce under 29 U.S.C. §§ 203(b). Should an employee work for more than forty hours in one week, the FLSA requires employers to pay those employees "at a rate not less than one-half times the regular rate." *Id.* Pascariello is alleged to have been a supervisorial agent of both NLP and CTC and has represented herself to be the principal of NLP. SAC ¶ 14. She is thus an "employer" for the purposes of California law, because she is an "owner, director, officer, or managing agent of the employer." Cal. Labor Code § 558.1. Section 510 of the California Labor Code ("CLC") restates the FLSA's overtime wage payment requirement. Plaintiffs allege that they repeatedly worked more than forty hours per week during their employment for Defendants at the hotel but were never paid overtime. SAC ¶ 20. Taken as true, the allegations are sufficient to establish a claim for violations of the FLSA and CLC. Similarly, under § 1197 of the CLC, employers must pay employees minimum wage for their work. Plaintiffs' allegations that Defendants did not pay them overtime wages, taken as true, sufficiently indicate that they were not paid a minimum wage for their work, thereby establishing violations of §§ 206 and 207 of the FLSA and § 1197 of the CLC. *See* SAC ¶¶ 20, 29.

§ 226.7 of the CLC mandates that when an employer does not allow its employees to take

required meal breaks in accordance with state law, "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Cal. Labor Code § 226.7. In their complaint, Plaintiffs allege that Defendants never provided them meal or rest breaks and that they worked through these mandatory breaks. SAC ¶ 21. Taken as true, these allegations are sufficient to show a violation of § 226.7. § 226(a) of the CLC requires an employer to furnish to its employee itemized wage statements on a semimonthly basis or at the time of each payment of wages. Plaintiffs allege they were not provided these statements. *Id.* ¶ 24. Finally, § 202 of the CLC requires that when an employee quits without having a contract for a set time period, the employer must pay the employee all wages due within 72 hours of the employee's quitting. Plaintiffs sufficiently allege that Defendants did not comply with this requirement. *Id.* ¶ 22.

Violations of the above statutory provisions can constitute unlawful business practices in violation California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* Similarly, California's Private Attorneys General Act ("PAGA"), Cal. Labor Code § 2698, *et seq.*, allows aggrieved employees to recover civil penalties for Labor Code violations, provided they give notice to the Labor and Workforce Development Agency ("LWDA"). Plaintiffs allege they sent notice to the LWDA on May 14, 2013. SAC ¶ 68. Their PAGA claim is thus successfully pled as to the Labor Code violations asserted in their complaint. The ninth cause of action was not asserted against Pascariello, NLP, or CTC.

The fourth *Eitel* factor—the amount in controversy—does not weigh against default judgment. Plaintiff Marquez seeks $81,101.74; Plaintiff Cano seeks $12,469.99; and Plaintiff Tonayan seeks $11,349.60. *See* Rice. Suppl. Decl., Ex. 4. Each of these totals consists of unpaid minimum wages, unpaid overtime wages, meal and rest period compensation, compensation for unprovided itemized wage statements (Marquez only), waiting time penalties for unpaid wages, pre-judgment interest, and PAGA civil penalties. Plaintiffs also seek PAGA penalties for other aggrieved employees in the amount of $21,166.00. And finally, Plaintiffs seek PAGA penalties for the LWDA in the amount of $40,650.00. These PAGA totals consist of penalties for failure to pay minimum wages, failure to maintain business records, failure to pay timely wages upon

termination, failure to pay overtime, and failure to pay for meal and rest periods. These amounts are not excessive, are what Plaintiffs are entitled to under federal and state law, and, as addressed below, are sufficiently established through documentary proof. The amount in controversy therefore does not weigh against granting default judgment.

The fifth and sixth factors also weigh in favor of default judgment. Though Piscariello answered, her failure to participate in this action led this Court to strike her answer, and thus the allegations in the Complaint are taken as true, especially in light of Plaintiffs' declarations supporting those allegations. *See Cruz v. Quang*, No. 13-CV-00181-VC, 2015 WL 348869, at *5 (N.D. Cal. Jan. 23, 2015). Piscariello's continued failure to comply with orders of this Court does not appear to have been due to excusable neglect, especially in light of the fact that Piscariello engaged with the litigation prior to removal.

Lastly, while federal policy does not favor entering default judgment against unresponsive defendants, Federal Rule of Civil Procedure 55(b)(2) permits the court to enter default against defendants who simply refuse to litigate. *J & J Sports Prods., Inc. v. Deleon*, No. 5:13-CV-02030, 2014 WL 121711, at *2 (N.D. Cal. Jan. 13, 2014) (citation omitted). Therefore, despite this general reluctance, the seventh *Eitel* factor also weighs in favor of entering default judgment against Piscariello.

Accordingly, the Court GRANTS Plaintiffs' Motion for Default Judgment as to Pascariello.

**C.     Damages**

Plaintiffs[1] seek a variety of damages and penalties, as well as injunctive relief. The Court discusses the remedy warranted under each cause of action.

A default judgment for damages may not differ in kind or exceed the amount demanded in the complaint. Fed. R. Civ. Proc. 54(c). In this case, although Plaintiffs did not set forth any specific amount of damages demanded, such amount can be determined from the pleading itself. Plaintiffs request statutory damages and penalties based on their work history with Defendants.

---

[1] Although Plaintiff Aaron Lugo Hernandez is still in the case, he does not seek any remedies through the present motion. As such, the Court awards him $0.

7

As Plaintiffs' employers, Defendants are deemed to know the working hours of their employees and to know the statutory wage requirements and penalty provisions. Thus, the Court is satisfied that the SAC sufficiently informed Defendants of the total liability they were facing. Nothing more than simple arithmetic would be required to calculate the damages requested.

Before turning to the individual causes of action, the Court describes the evidence Plaintiffs put forward in support of their motion. *Id.* Each of the Plaintiffs submits a declaration in support of the motion for default judgment. *See generally* Marquez Decl., ECF 79-20; Tonayan Decl., ECF 79-21; Cano Decl., ECF 79-22. They also provide various documents collected from Defendants during discovery. Ultimately, in calculating damages, "Plaintiffs have reconstructed their time based on the daily schedule that they worked, as no time records were maintained by the Defendants." Mot. at 20. The Court finds these declarations sufficient to support a finding of specific damages. *See Brock v. Seto*, 790 F.2d 1446, 1448 (9th Cir. 1986) (finding employees' testimonies sufficient to allow for reasonable inferences as to amount of damages for FLSA claim); *Cruz*, 2015 WL 348869, at *6 (awarding back wages "based on Plaintiffs' recollection of their respective overtime hours").

The Court now discusses the relevant damages for each cause of action in turn.

### 1. Unpaid Minimum Wages and Overtime Wages

§ 510 of the CLC states that employees will be paid "at the rate of no less than one and one-half times the regular rate of pay for an employee" should they work in excess of either eight hours in one day, or over forty hours in one week.[2] CLC § 1197 provides that employees shall be paid the minimum wage, and payment less than the minimum wage is unlawful. CLC § 1194(a) provides that "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

Plaintiffs' testimony and the records they have submitted demonstrate that they were

---

[2] Plaintiffs do not seek separate compensation under the FLSA, 29 U.S.C. § 207. *See* Mot. at 26. Thus, the Court need not consider approval of a collective action under the FLSA.

8

1  denied minimum wage and overtime pay. Plaintiff Marquez worked for Defendants from
2  September 2008 to March 2013. SAC ¶ 17. Marquez avers that she worked at the hotel seven
3  nights per week, spending 6.5 hours cleaning and 1.5 hours traveling to and from the worksite
4  under her employer's control, for a total of 8 hours per night. Marquez Decl. ¶ 7. To travel to and
5  from the worksite, she was required to use the employer's transportation. *Id.* ¶ 11. She thus
6  worked 56 hours per week, including 16 hours of overtime. From September 2008 to September
7  10, 2010, she was paid $1600 per month. From September 11, 2010 through December 31, 2010,
8  she was paid $1662.08 per month. From January 1, 2012 through July 24, 2012, she was paid
9  $376.62 per week, and from July 25, 2012 through March 2, 2013, she was paid $369.08 per
10 week. She also was not paid for six total weeks of employment. *See id.* ¶¶ 7–9. Employer
11 records and Marquez's records indicate that a different (though largely comparable) pay rate than
12 Marquez remembers was used for several of these pay periods. Rice Suppl. Decl. ¶¶ 5–7, 9–10,
13 ECF 84; ECF 79-7 at 29–30; ECF 79-6 at 32–33; 79-9 at 115–24. Where discrepancies exist,
14 Plaintiffs and the Court rely on the records over Marquez's recollections.

15 Plaintiff Cano worked for Defendants from April 22, 2012 to September 6, 2012. Cano
16 Decl. ¶ 5. Like Marquez, he worked seven nights per week for 8 hours (including transportation
17 time). *Id.* ¶ 6. He thus worked 56 hours per week, including 16 hours of overtime. He was paid a
18 fixed rate no matter the hours works: From April 22, 2012 to May 26, 2012, he was paid $367.83
19 per week, and from May 27, 2012 to September 6, 2012, he was paid $340.53 per week. *Id.* ¶¶ 8–
20 9. He also was never paid for two weeks and five days of wages. *Id.* ¶ 10; Rice Suppl. Decl. ¶ 13.
21 Employer records and Cano's records indicate that a different (though largely comparable) pay
22 rate than Cano remembers was used for several of the pay periods. Rice Suppl. Decl. ¶¶ 14; ECF
23 79-22 at 6–11. Where discrepancies exist, Plaintiffs and the Court rely on the records over Cano's
24 recollections.

25 Finally, Plaintiff Tonayan worked for Defendants from July 13, 2012 to October 18, 2012.
26 Tonayan Decl. ¶ 5. She worked seven nights a week for eight hours (including transportation).
27 She thus worked 56 hours per week, including 16 hours of overtime. She was paid a fixed fee of
28 $360.60. *Id.* ¶ 7. She is still owed two weeks of wages. *Id.* ¶ 8. These recollections are

9

confirmed by the employer's and Tonayan's records. Rice Suppl. Decl. ¶¶ 15; ECF 79-21 at 6–13; ECF 79-6 at 43.

Each Plaintiff alleges he or she was not paid for the 1.5 hours per day spent travelling to and from the work site. These hours are compensable, as each Plaintiff has averred that the travel was compulsory. *See Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 587–88 (2000), *as modified* (May 10, 2000) (holding "hours worked" under Wage Order No. 14-80 includes compulsory travel time); *Rodriguez v. SGLC, Inc.*, No. 2:08-CV-01971-MCE, 2012 WL 5705992, at *18 (E.D. Cal. Nov. 15, 2012) (citing *Rutti v. Lojack Corp.*, 596 F.3d 1046, 1062 (9th Cir. 2010)) (same for Cal. Labor Code § 510). Thus, each Plaintiff is owed eight hours of minimum wage per work day, up to 40 hours in the week. Moreover, Plaintiffs are owed 16 hours of overtime pay. Plaintiffs are thus owed the difference between the amount earned (40 hours of minimum wage and 16 hours of overtime) and the amount the employer paid (the weekly or monthly flat fee).

Plaintiffs have calculated these amounts based on the applicable $8 minimum wage at the time. *See* Rice Suppl. Decl., Exs. 1 & 2; Cal. Labor Code § 1182.12 (effective Jan. 1, 2007 to Dec. 31, 2013) ($8 per hour minimum wage). Defendants have not brought forth any evidence to rebut these calculations. *See Brock*, 790 F.2d at 1448. This evidence is sufficient to establish a reasonable inference that Plaintiffs are owed the amount they seek. *See Ulin v. ALAEA-72, Inc.*, No. C-09-3160-EDL, 2011 WL 723617, at *13 (N.D. Cal. Feb. 23, 2011) (where "very few records were kept," overtime compensation "must necessarily be approximated"); *accord Rosas v. Hua Ping Chang*, No. 5:13-CV-01800-HRL, 2014 WL 4925122, at *4 (N.D. Cal. Sept. 29 2014); *Telles v. Li*, No. 5:11-CV-01470-LHK, 2013 WL 5199811, at *10 (N.D. Cal. Sept. 16, 2013).

The Court has reviewed these calculations and GRANTS Plaintiffs' request for the following unpaid wages: Marquez: $22,632.66; Cano: $3,675.99; and Tonayan: $3,143.60.

Plaintiffs are also entitled to pre-judgment interest on their unpaid wages from February 2013[3] until now at a rate of 10% per annum. *See* Rice Suppl. Decl., Ex. 3. As such the Court

---

[3] Though Plaintiffs Cano and Tonayan ended their employment before February 2013, their calculations for pre-judgment interest begin on this date.

GRANTS pre-judgment interest in the following amounts[4]: Marquez: $17,158.73; Cano: $2,786.92; and Tonayan: $2,383.29.[5]

### 2. Liquidated Damages

Plaintiffs also request liquidated damages under Cal. Labor Code § 1194.2, based on their wages due for the 1.5 hours of compulsory travel each day at the minimum wage rate of $8.00 per hour, and for the hours for weeks in which they were not paid at all. *See* Rice Suppl. Decl., Ex. 1, Column 10 (Marquez); Rice Suppl. Decl., Ex. 2, Section 1, Column 10 (Cano); Rice Suppl. Decl., Ex. 2, Section 2, Column 10 (Tonayan). Plaintiffs request these damages for the past three years, based on the relevant statute of limitations. *See* Cal. Labor Code § 1194.2 ("A suit may be filed for liquidated damages at any time before the expiration of the statute of limitations on an action for wages from which the liquidated damages arise."); *Cuadra v. Millan*, 17 Cal. 4th 855, 859 (1998) (wage liability actions have three year statute of limitations period under Cal. Code Civ. Proc. § 338(a) and wage calculations date from filing of complaint back to beginning of statutory limitation period). The Court agrees that Plaintiffs are entitled to liquidated damages and that these calculations are correct. *See Sillah v. Command Int'l Sec. Srvs.*, 154 F. Supp. 3d 891, 914 (N.D. Cal. 2015) (awarding liquidated damages where defendant had not rebutted the plaintiffs' evidence). The Court thus GRANTS Plaintiffs' request for the following liquidated damages amounts: Marquez: $9,268,00; Cano: $1,596.00; and Tonayan: $1,344.00.

---

[4] Plaintiffs calculate their pre-judgment interest by including the amount owed for meal and rest period violations. *See* Rice Suppl. Decl., Ex. 3. But their motion does not cite case law supporting the argument that pre-judgment interest can be awarded for meal and rest period violations, and it does not include the pre-judgment interest request with respect to such violations. Indeed, case law appears to hold that pre-judgment interest is not warranted for meal and rest period violations. *See Van v. Language Line Servs., Inc.*, No. 14-CV-03791-LHK, 2016 WL 3143951, at *18 (N.D. Cal. June 6, 2016); *In re: Autozone, Inc.*, No. 3:10-MD-02159-CRB, 2016 WL 4208200, at *7 (N.D. Cal. Aug. 10, 2016). As such, the Court calculates the pre-judgment interest owed based only on the total unpaid minimum wage and overtime wages due.

[5] These calculations are based on the following formula: (Amount A x 0.1 + Amount A) = Amount B; (Amount B x 0.1 + Amount B) = Amount C; etc., where each Amount is measured in a 365-day period for 5 years between February 1, 2013 and January 31, 2018, and the final Amount is measured in an 11-month period from February 1, 2018 through December 31, 2018. *See* Rice Suppl. Decl., Ex. 3.

### 3. Rest and Meal Break Penalties

CLC § 226.7 mandates that if "an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Although the wording is somewhat ambiguous, California courts interpreting this provision have concluded that an employee "may recover up to two additional hours of pay on a single work day for meal period and rest period violations—one for failure to provide a meal period and another for failure to provide a rest period." *United Parcel Serv., Inc. v. Superior Court*, 196 Cal. App. 4th 57, 70 (2011); *see Valdez v. Neil Jones Food Co.*, No. 1:13-cv-00519-AWI-SAB, 2013 WL 4500568, at *4–*5 (E.D. Cal. Aug. 22, 2013).

Plaintiffs each attest that they were never provided meal or rest breaks during their employment. Marquez Decl. ¶ 16; Cano Decl. ¶ 13; Tonayan Decl. ¶ 13; SAC ¶¶ 21, 43. Assuming two hours for each shift that they worked, Plaintiffs determined what premium payments they are owed for missed meal and rest periods. Rice Suppl. Decl, Exs. 1 & 2. This evidence is sufficient to establish Plaintiffs' entitlement to the following amounts in statutory penalties for missed meal and rest breaks. Accordingly, the Court GRANTS Plaintiffs' request for penalties for missed meal and rest breaks in the following amounts: Marquez: $5,936.00 (meal) and $5,936.00 (rest); Cano: $1,064.00 (meal) and $1,064.00 (rest); Tonayan: $896.00 (meal) and $896.00 (rest).

### 4. Itemized Wage Statements

Cal. Labor Code § 226(a) requires that employers provide wage statements that accurately itemize earnings, hours worked, applicable rates of pay, the name and address of the legal entity that is the employer, and payroll deductions, among other information. If an employer knowingly and intentionally fails to provide an accurate wage statement to an employee, the employee may recover "the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." *Id.* To establish that Defendants' violation of § 226(a) was "knowing and intentional," Plaintiffs must

demonstrate that Defendants were "aware of the factual predicate underlying the violation[s]." *Novoa v. Charter Commc'ns, LLC*, 100 F.Supp.3d 1013, 1028 (E.D. Cal. 2015). For example, an "isolated and unintentional payroll error due to clerical or inadvertent mistake" will not suffice. *Cabardo v. Patacsil*, 248 F. Supp. 3d 1002, 1010 (E.D. Cal. 2017) (quoting Cal. Labor Code § 226(e)(3)). This claim has a one year statute of limitations. *See Falk v. Children's Hosp. L.A.*, 237 Cal. App. 4th 1454, 1469 (2015).

There is no dispute that Defendants did not provide Plaintiffs with itemized statements. Marquez Decl. ¶4; Cano Decl. ¶ 3; Tonayan Decl. ¶¶ 3, 14; Katz Decl., Exs. 1, 2, 4; SAC ¶¶ 49, 50. Marquez worked for Defendants for almost five years and was never provided a wage statement. Though Cano and Tonayan worked for Defendants for only a few months, they too were never given itemized wage statements, and their periods of employment began many years after Marquez's began. From these facts, the Court can reasonably infer that Defendants knew they were not providing itemized wage statements; this failure was not due to a mere clerical error. Plaintiff Marquez is the only one who worked within the applicable statute of limitations, and she worked for only two pay periods. As such, the Court GRANTS Plaintiffs' request to award Plaintiff Marquez $150 for failure to provide itemized wage statements.

### 5. Waiting Time Penalties

Cal. Labor Code § 203 mandates that a worker who is discharged or quits and whose wages are not paid continues to accrue his daily wages for up to thirty days for a willful violation. "Willful" in the context of § 203 does not require malicious intent. It only requires that the employer intentionally paid the employee in the manner that payment was made. *See Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 7 (Cal. Ct. App. 1981) ("As used in section 203, 'willful' merely means that the employer intentionally failed or refused to perform an act which was required to be done."). If the Court finds that Plaintiffs are owed unpaid wages, waiting time penalties in the amount of thirty-days' wages should also be awarded because the complaint was filed after the thirty-day period passed.

Plaintiffs were not timely paid all wages owed after they left Defendants' employment more than five years ago, despite repeated requests to be compensated. Marquez Decl. ¶¶ 7, 8, 9,

18; Cano Decl. ¶¶ 6, 7, 8, 9, 10, 16; Tonayan Decl. ¶¶ 6, 7, 8, 9, 15. This evidence, in combination with the evidence that Defendants routinely missed paying Plaintiffs altogether, shows that Defendants willfully withheld the payments after Plaintiffs quit. As such, Plaintiffs are entitled to the statutory maximum of 30 days of waiting time penalties. The Court GRANTS Plaintiffs waiting time penalties as follows: Marquez: $1,920.00; Cano: $1,920.00; Tonayan: $1,920.00.

### 6. Injunctive Relief

Plaintiffs argue they are entitled to injunctive relief under Cal. Bus. & Prof. Code § 17203. "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Plaintiffs fail to argue that they satisfy any of these elements. As such, the Court DENIES the request for injunctive relief. Further, restitution is not available because all statutory damages and penalties have been awarded. Thus, no relief is allowed under the seventh claim.

### 7. PAGA Claims

Plaintiffs also assert each of their claims under the California Private Attorneys General Act of 2004, California Labor Code § 2699 *et seq.* ("PAGA"). That section provides that "any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees[.]" Cal. Lab. Code § 2699(a). The representative action authorized by PAGA is an enforcement action, with one aggrieved employee acting as a private attorney general to collect penalties from employers who violate the Labor Code.

The penalty available under PAGA is "one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation," unless the code provision that is violated "specifically provide[s]" for a civil penalty. *Id.* § 2699(f)(2). These PAGA penalties are separate and apart from the actual damages that a Plaintiff may recover under other labor code sections. *See Thurman v. Bayshore Transit Management, Inc.*, 203 Cal.App.4th 1112, 1144–48 (2012). 25% of the penalties recovered go to the aggrieved plaintiff and 75% goes to the Labor and Workforce Development Agency ("LWDA"). *See id.* § 2699(i). Aggrieved employees are entitled to penalties for violations that occurred no more than one year prior to the sending of notice to LWDA. *See Culley v. Lincare Inc.*, 236 F. Supp. 3d 1184, 1191 (E.D. Cal. 2017).

As an initial matter, Plaintiffs here are aggrieved employees under PAGA because they were "employed by the alleged violator" and "sustained one or more of the alleged violations," as discussed above under the *Eitel* factors. *Id.* § 2699(c). They also satisfied the procedural requirement of providing notice to the LWDA sufficiently in advance of bringing this claim. *Id.* § 2699.3(a); *see* SAC ¶ 68. This notice was also provided to Defendants and contained the necessary substantive allegations to constitute proper notice of Plaintiffs claims here. *See* Katz Decl., Ex. 7, ECF 79-12.

Plaintiffs also bring this action on behalf of other former aggrieved employees, which is discussed in more detail below. First, the Court addresses each of Plaintiffs' claims as to their own grievances, and then turns to the aggrieved former employees.

### a. Plaintiffs' PAGA Penalties

Plaintiffs seek penalties for their minimum wage, overtime, meal and rest breaks, itemized wage statements, and waiting time claims.

<u>Minimum Wages</u>: Plaintiffs seek penalties under § 1197.1(a), which provides specific penalties for an employer's intentional failure to pay minimum wage at a rate of $100 per plaintiff for the first pay period, and $250 per plaintiff per pay period for each subsequent violation. Plaintiffs aver that they were paid on a weekly basis during the relevant time period, so they have used a weekly pay period calculation. *See* Marquez Decl. ¶ 8; Tonayan Decl. ¶ 7; Cano Decl. ¶ 8.

15

The Court has reviewed Plaintiffs' calculations and GRANTS PAGA penalties in the following amounts: Marquez: $ 2,587.50 & LWDA: $ 7,762.50; Cano: $962.50 & LWDA: $2,887.50; Tonayan: $962.50 & LWDA: $2,887.50.

Overtime Wages: Plaintiffs seek recovery of penalties for failure to pay overtime wages under § 558. § 558 provides for civil penalties for violations of the provisions asserted as claims in this action, at a rate of "$50 for each aggrieved employee per pay period for the initial violation, and $100 per employee for each subsequent violation for minimum wage, overtime, meal break and wage statement violations." *Guifu Li v. A Perfect Day Franchise, Inc.*, No. 5:10-CV-01189-LHK, 2012 WL 2236752, at *17 (N.D. Cal. June 15, 2012) (citing § 558). The Court has reviewed Plaintiffs' calculations and GRANTS PAGA penalties in the following amounts: Marquez: $1,037.50 & LWDA: $3,112.50; Cano: $387.50 & LWDA: $1,162.50; Tonayan: $387.50 & LWDA: $1,162.50.

Meal & Rest Breaks: Failure to pay the premium due for meal and rest periods under § 226.7 constitutes a failure to pay wages, which is recoverable under § 558. *See Guifu*, 2012 WL 2236752, at * 17. Thus, the Court GRANTS Plaintiffs PAGA penalties in the following amounts for meal periods: Marquez: $1,037.50 & LWDA: $3,112.50; Cano: $387.50 & LWDA: $1,162.50; Tonayan: $387.50 & LWDA: $1,162.50. The Court also GRANTS PAGA penalties in the following amounts for rest periods: Marquez: $1,037.50 & LWDA: $3,112.50; Cano: $387.50 & LWDA: $1,162.50; Tonayan: $387.50 & LWDA: $1,162.50.

Waiting Time & Itemized Wage Statements:

As discussed above, Plaintiffs are entitled to recovery of penalties under § 203 and § 226 for waiting time violations and Defendants' failure to provide itemized wage statements, respectively. As such, granting PAGA penalties for these two claims would be duplicative recovery. Plaintiffs have provided no authority that would permit double recovery of essentially the same penalties. *Accord Guifu*, 2012 WL 2236752, at *17. Therefore, the Court DENIES Plaintiffs' request for PAGA penalties for the failure to provide accurate wage statements or waiting time as these penalties have already been awarded.

*b. Aggrieved Former Employees' PAGA Penalties*

Plaintiffs also seek penalties for Defendants' minimum wage, overtime, meal and rest breaks, itemized wage statements, and waiting time violations on behalf of 1–2 aggrieved former employees. While the Court finds Plaintiffs' testimonies sufficient for calculating their own damages, the evidence they provide in support of a finding of penalties as to these former employees is insufficient to justify PAGA penalties as to those employees. The only evidence Plaintiffs provide is the declaration of Plaintiff Marquez that she sometimes worked with 2–3 other people during her employment. *See* Mot. at 37–38. They then assume that those workers were paid the same amount, worked the same number of hours, faced the same conditions, and worked for the entirety of the PAGA limitation period. These assumptions do not constitute evidence sufficient to calculate proper PAGA penalties as to these employees. The Court thus DENIES Plaintiffs' request for PAGA penalties for the former employees.

### D. Attorney's Fees and Costs

The CLC requires the court to "award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action." Cal. Labor Code § 218.5. Like, the FLSA § 216(b) provides for a reasonable attorney's fee and costs. The party seeking attorney's fees must show that the rates sought are "in line with the prevailing market rate of the relevant community." *Carson v. Billings Police Dept.*, 470 F.3d 889, 891 (9th Cir. 2006). Typically, "affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rates." *Rodriguez v. Wallia*, No. C-11-03854-EDL, 2012 WL 1831579, at *4 (N.D. Cal. April 18, 2012) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)).

In the present case, Plaintiffs seek fees for four attorneys: (1) Cynthia L. Rice, an attorney admitted to the state bar in 1979, at a rate of $750; (2) Phyllis Katz, an attorney admitted to the state bar in 1979, at a rate of $550; (3) Elena Dineen, an attorney admitted to the state bar in 2009, at a rate of $400 (a $50 reduction from her normal hourly rate); and (4) Maureen Keffer, an attorney admitted to the state bar in 2011, at a rate of $400 (a $50 reduction from her normal hourly rate). *See* Katz Decl. ¶ 16; Rice Decl. ¶¶ 5–9; Mot. at 41. Plaintiffs request only 50% of

the totally attorney's fees accumulated in this case.

The Court finds these hourly rates to be reasonable for attorneys of similar experience, respectively, in the Northern District of California. *See* Mot. at 42–43 (citing cases with similar hourly rates). The total amount of attorney's fees requested is $148,007.50. Plaintiffs' counsel further states that they incurred costs in the amount of $3,556.87. Katz Decl., Ex. 12, ECF 79-17. The Court finds the 66.8 hours devoted to this matter by attorney Rice, the 157.7 hours by attorney Katz, the 179.45 hours by attorney Dineen, and the 218.5 hours by attorney Keffer to be reasonable in prosecuting this matter. Accordingly, the Court GRANTS Plaintiffs' request for $148,007.50 in reasonable attorney's fees and $3,556.87 in costs, totaling $151,564.37.

**IV.    ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Plaintiffs' Motion for Default Judgment is GRANTED. Defendants shall be jointly and severally liable for a total of $243,145.56, which includes the following amounts:

Damages, and Statutory Penalties:

- Plaintiff Marquez: $22,632.66
- Plaintiff Cano: $3,675.99
- Plaintiff Tonayan: $3,143.60
- Plaintiff Hernandez: $0

Pre-Judgment Interest:

- Plaintiff Marquez: $17,158.73
- Plaintiff Cano: $2,786.92
- Plaintiff Tonayan: $2,383.29
- Plaintiff Hernandez: $0

PAGA Penalties:

- Plaintiff Marquez: $5,700
- Plaintiff Cano: $2,125
- Plaintiff Tonayan: $2,125
- Plaintiff Hernandez: $0

- LWDA: $29,850

Attorney's Fees:

- $148,007.50

Costs

- $3,556.87

The Court DENIES Plaintiffs' requests for injunctive relief, relief under Cal. Bus. & Prof. Code §§ 17200, *et seq.*, relief under the FLSA, PAGA penalties for itemized wage statements and waiting time violations, and PAGA penalties on behalf of aggrieved former employees.

**IT IS SO ORDERED.**

Dated: February 15, 2019

_____
BETH LABSON FREEMAN
United States District Judge